IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2003 Session

## JOHN WHITNEY EVANS III v. DINAH PETREE EVANS

Appeal from the Chancery Court for Lawrence County
No. 7352-95     Jim T. Hamilton, Judge

No. M2002-02947-COA-R3-CV - Filed August 23, 2004

In this appeal, Husband seeks to be relieved from his obligation to pay alimony *in futuro* to his former wife. In support of his request, Husband asserts that his former wife's cohabitation with another man terminated his obligation since Wife was being supported by that third person and was in no need of alimony. The trial court denied Husband's petition finding Wife was not living with a third person, had rebutted presumption that she does not need the alimony, and that no material change in circumstances had occurred to warrant modification of the initial award of alimony. We affirm those holdings. However, we reverse the trial court's award of attorney's fees to Wife.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which ALAN E. GLENN, SP. J., joined. WILLIAM C. KOCH, JR., P.J., M.S., filed a concurring opinion.

Helen Sfikas Rogers and Lana L. Lennington, Nashville, Tennessee, for the appellant, John Whitney Evans, III.

Irene R. Haude, Nashville, Tennessee, for the appellee, Dinah Petree Evans.

### OPINION

The parties, John Evans ("Husband") and Dinah Evans ("Wife") were divorced in 1996 and entered into a Marital Dissolution Agreement which was incorporated into the decree by the trial court. At the time of the divorce, Husband was receiving $10,600 per month in tax free disability insurance payments. Although Wife had been trained as a nurse, she had not worked for twenty-five years by agreement of the parties. She worked briefly pending the divorce, but lost her job due to medical problems.

The MDA and divorce decree provided that Husband was to pay wife alimony *in futuro* of $800 per week[1] until Wife's death or remarriage. In the MDA, the parties acknowledged Husband's source of income was the disability insurance and that if those payments stopped Husband could seek a decrease in alimony. The MDA also specifically stated that the parties understood Wife intended to seek employment as a nurse and that her "success or failure in obtaining such employment should not be grounds for an increase or decrease in alimony."

On March 13, 2002, Husband filed a petition to terminate or decrease his alimony payments on the basis Wife had been cohabiting with a third party, Mr. Dale Quillen, that she was being supported by Mr. Quillen, and that she was no longer in need of alimony. Husband was prompted to file the petition by this court's decision in *Wright v. Quillen*, 83 S.W.3d 768 (Tenn. Ct. App. 2002). In his petition and this appeal, Husband makes frequent reference to and relies upon that decision.

The *Wright* case, in pertinent part, involved efforts by Mr. Quillen's former wife to obtain a reduction in or termination of alimony she paid Mr. Quillen. The jury found that as of the 2000 trial Mr. Quillen was living with Ms. Evans, Wife in the case before us, and that Mr. Quillen was providing support to Ms. Evans. *Id.* at 776. In addition, the jury found that Mr. Quillen did not need alimony to maintain his lifestyle, that his standard of living had not declined since the divorce, that his expenses had not increased since the divorce, and that his net worth had increased since the divorce. Mr. Quillen's income from practicing law had increased 50% since his divorce, and he had saved, not spent, the alimony he had received since the divorce.

Based upon these facts, this court held that Mr. Quillen's cohabitation with Ms. Evans triggered the presumption in Tenn. Code Ann. § 36-5-101(a)(3), and the jury's findings that he did not need continued alimony justified suspension of his former wife's alimony obligation. In his original petition in the case before us Mr. Evans maintained that Tenn. Code Ann. § 36-5-101(a)(3) justified termination, suspension or reduction of the *in futuro* alimony paid his former wife. In an amended petition filed August 19, 2002, Husband alleged, in addition to the cohabitation presumption, that there had been a substantial and material change of circumstances since the parties' divorce, *i.e.*, Wife's relationship with Mr. Quillen and its financial gain to her. The amendment also alleged, as another change in circumstances, that Wife had been supporting their daughter and grandchild to a great extent. Consequently, Husband asserted, Ms. Evans did not need the alimony he pays her.

Following a hearing, the trial court dismissed Husband's petition to modify his alimony payment and ordered Husband to pay Wife's attorney's fees in the amount of $14,164.17. The trial court made extensive findings of fact. The court found that prior to their divorce, Husband and Wife had "lived an extravagant and expensive lifestyle," citing examples. The court also found that Husband was 59 years old, lived rent free on his father's farm where he cared for livestock, continued to receive the disability insurance payments, and stipulated that his ability to pay the

---

[1]Husband was to pay $280 per week originally until the marital residence was sold.

2

alimony was not an issue. As to Wife, the trial court found she was 58 years old; had been employed for almost two months at the time of the trial as a registered nurse making $15.00 per hour with average wages of $285.65 per week; had difficulty going back to work because of her twenty-five year absence from the profession; had difficulty physically due to the twelve-hour shifts she worked; and that she had health problems. The court also made the following findings:

> [F]ollowing the divorce in 1996, Dinah Petree Evans began dating Dale Quillen. Dinah Petree Evans stayed with Dale Quillen on weekends, she took nice trips with him, Dale Quillen bought her expensive jewelry and clothing, and paid the difference of the trade-in on a vehicle. Dinah Petree Evans had lived with Dale Quillen for periods of time since June of 1999 to May of 2002, when she moved out.[2] The Court finds that while Dinah Petree Evans lived with Dale Quillen, almost all of the money not being used for her day-to-day expenses was expended for the benefit of the daughter, Jeannie Whitney, and her minor child, Evan. The Court finds that Dale Quillen is seventy-seven (77) years old; and that Dinah Petree Evans and Dale Quillen did not intend to marry. Dinah Petree Evans had moved out into her condominium in May 2002 and has stated that she was going on with her life.
>
> The facts are undisputed that Dinah Petree Evans bought a condominium in April, 2002 at Nashboro Village. She made a down payment with the remaining monies which she had from the sale of the property she obtained in the divorce and she has a mortgage with monthly payments of Six Hundred Eighty-Six Dollars and Thirty-Five Cents ($686.35). Dinah Petree Evans has no retirement. Dinah Petree Evans's voter registration card, driver's license, and utilities show the condominium address of 2024 Nashboro Boulevard, Nashville, TN 37217. Dinah Petree Evans moved into her condominium on May 14, 2002; and she has only spent one night with Dale Quillen since then and that was on a trip. She does see Dale Quillen. There is no proof that Dale Quillen is paying money toward Dinah Petree Evans's day-to-day expenses or that he intends to. Based on Dinah Petree Evans's income and expenses, which the Court finds to be reasonable, she is in need of alimony as well as the earnings from her nursing in order to maintain a home for herself and meet her day-to-day expenses.
>
> T.C.A. § 36-5-101(a)(3) states that "In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is thereby raised that (A) The third party is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the Court therefore should suspend all or part of the alimony obligation of the former spouse."

---

[2]Husband's petition to modify his alimony was filed March 13, 2002, and served on Ms. Evans April 3, 2002. On April 18, 2002, Ms. Evans signed a contract to purchase a condominium and moved into it prior to the modification hearing. Prior to the move, Ms. Evans lived with Mr. Quillen at his home.

The Court finds that when reading T.C.A. § 36-5-101(a), it does not contemplate terminating the alimony; but only contemplates suspending or reducing all or part of the alimony under certain conditions. The Court finds that while Dinah Petree Evans has lived with Dale Quillen, she no longer lives with Dale Quillen. The Court further finds that Dinah Petree Evans has rebutted the presumption that she does not need the alimony; that in fact Dinah Petree Evans is in need of alimony as previously ordered by the Court; and that John Whitney Evans, III should continue to pay same.

The Court finds that there are no material changes in circumstances as it was obviously contemplated by the parties from their actions that they would continue to help their children and Dinah Petree Evans would seek employment in the nursing field.

The Court further finds that Dinah Petree Evans should be awarded attorney's fees pursuant to T.C.A. § 36-5-103(c), since she has been required to expend funds for attorney's fees to enforce the divorce decree. The Court finds that the fee submitted by Dinah Petree Evans's attorney were necessary and reasonable to enforce the decree especially in comparison to those expended by John Whitney Evans, III's attorney to terminate or reduce the alimony previously ordered.

## I. MODIFICATION OF SUPPORT AWARD

Modifications of alimony may be granted only upon a showing of substantial and material change in circumstances since entry of the original support order. Tenn. Code Ann. §36-5-101(a)(1); *Bogan v. Bogan*, 60 S.W.3d 721, 727-28 (Tenn. 2001). In order to be material, a change in circumstances must have been unforeseeable, unanticipated, or not within the contemplation of the parties at the time of the decree. *Id.* at 728; *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). To be considered substantial, the change must significantly affect either the obligor's ability to pay or the obligee's need for support. *Bogan*, 60 S.W.3d at 728; *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

Even a substantial and material change of circumstances does not automatically result in a modification. Modification must also be justified under the factors relevant to an initial award of alimony, particularly the receiving spouse's need and the paying spouse's ability to pay. *Bogan*, 60 S.W.3d at 730; *Wright*, 83 S.W.3d at 773. "As evidenced by its permissive language, the statute permitting modification of support awards contemplates that a trial court has no duty to reduce or terminate an award merely because it finds a substantial and material change of circumstances." *Bogan*, 60 S.W.3d at 730. Where there has been such a change of circumstances, the ability of the obligor spouse to provide support must be given equal consideration to the obligee spouse's need. *Id.*

4

Generally, the party seeking the modification bears the burden of proving the modification is warranted. *Azbill v. Azbill,* 661 S.W.2d 682, 686 (Tenn. 1983); *Wright*, 83 S.W.3d at 772; *Elliot*, 825 S.W.2d at 90. However, the legislature has identified one change in circumstances that will trigger a review of the continued need for alimony and that shifts the evidentiary burden. The relevant provision, Tenn. Code Ann. § 36-5-101(a)(3), sometimes referred to as the cohabitation statute, creates a rebuttable presumption that the recipient of alimony *in futuro* who lives with a third person is either receiving support from the third person or is contributing to the third person's support and, either way, no longer needs the previously awarded amount of alimony.[3]

Under Tenn. Code Ann. § 36-5-101(a)(3), cohabitation does not automatically end the right of the recipient to receive alimony; it merely shifts the evidentiary burden in a modification proceeding. *Isbell v. Isbell*, 816 S.W.2d 735, 738 (Tenn. 1991); *Wright*, 83 S.W.3d at 775. Once the presumption arises, the alimony recipient bears the burden of demonstrating a need for the previously awarded alimony, notwithstanding the cohabitation. *Azbill*, 661 S.W.2d at 686; *Wright*, 83 S.W.3d at 775.

Our standard of review for a modification decision has been explained by our Supreme Court:

Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *see also Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision

---

[3]Tenn. Code Ann. § 36-5-101(a)(3) provides:

(3) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is thereby raised that:

(A) The third person is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the court therefore should suspend all or part of the alimony obligation of the former spouse; or

(B) The third person is receiving support from the alimony recipient and the alimony recipient therefore does not need the amount of alimony previously awarded and the court therefore should suspend all or part of the alimony obligation of the former spouse. This subdivision (a)(3) shall in no way be construed to create any common- law marriage obligation as to third parties.

5

unless the court manifestly abused its discretion"). When the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them. See, e.g., *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d).

*Bogan*, 60 S.W.3d at 727.

## II. ANALYSIS

On appeal, Husband argues that the evidence preponderated in favor of the conclusion that Wife did not need the alimony that had been ordered at the time of divorce. He asserts that this lack of need is based on or proved by two circumstances: Wife's relationship with Mr. Quillen and her financial support of the parties' adult daughter and grandchild. Additionally, Husband variously argues: (1) Ms. Evans and Mr. Quillen were actually living together, contrary to the trial court's ruling, and, consequently, the presumption in the cohabitation statute arose; (2) the long-term relationship between Ms. Evans and Mr. Quillen benefitted Ms. Evans financially and, therefore, was sufficient to raise the presumption in the cohabitation statute; (3) regardless of cohabitation, the relationship was a change in circumstances justifying modification; (4) Mr. Quillen's support allowed Ms. Evans to provide financial assistance to her daughter and grandchild, demonstrating her lack of need; and (5) that Ms. Evans does not need the continued alimony because she has used the alimony in the past to provide financial assistance to her daughter.

Husband's arguments and briefs imply that the trial court should have based its decision on facts existing before Ms. Evans moved out of Mr. Quillen's house. Husband continually refers to facts he argues show the couple's cohabitation and/or the financial support given by Mr. Quillen to Ms. Evans that occurred before the change in Ms. Evans's living situation. Some of the incidents referred to occurred before the trial in *Wright*, more than two years before the trial herein. While those facts may be relevant to the history of the relationship between Mr. Quillen and Ms. Evans, they do not substitute for proof about the current situation.

Where the proof show that circumstances have changed it is clear that the current situation must be considered by the court. First, the statute uses the present tense, "In all cases where a person is receiving alimony in futuro and the alimony recipient *lives* with a third person . . . ." (emphasis added). Second, even if the presumptions of support and lack of need arise and are unrebutted, the court's remedy is to "*suspend* all or part of the alimony obligation," not terminate the alimony. (emphasis added). The clear implication is that if the situation justifying suspension ceases to exist, the alimony recipient may seek reinstatement of support from the former spouse.

In *Azbill*, the Supreme Court found that the 1980 statutory amendment now codified at Tenn. Code Ann. § 36-5-101(a)(3) was part of the statute expressly retaining a divorce decree within the control of the trial court for modification in the event of changed circumstances. *Azbill*, 661 S.W.2d at 686. The Court found that the alimony recipient in that case had not rebutted the presumption in Tenn. Code Ann. § 36-5-101(a)(3) and had not produced evidence supporting a reduction of $300

per month, the amount ordered by the trial court. Accordingly, the Court held that the entire amount of monthly alimony should be suspended from the date of the filing of the modification petition "until such time as a change of circumstances warrants reinstatement in whole or in part." *Id.* at 687.

Thus, a cohabiting alimony recipient whose alimony is suspended in whole or in part on the basis of Tenn. Code Ann. § 36-5-101(a)(3) could seek a reinstatement or modification based on changed circumstances, specifically that he or she is no longer living with a third person and is no longer receiving any support from that person. We can see no authority for, and no purpose to be served, in requiring a ruling based on past cohabitation to be entered and a request for reinstatement to be filed and heard when the change in residence occurs before the trial on the original modification petition.

We are mindful that a modification petition based on cohabitation will often trigger an end to that cohabitation. Faced with a potential loss of support, an alimony recipient could predictably choose to end the situation that jeopardizes that support. Whether the change in residence of the alimony recipient or the third party is genuine and permanent or whether it is a temporary subterfuge is a factual question to be determined by the fact finder. Even where the move is determined to be genuine, however, the paying former spouse may be entitled to some relief, in the form of suspension of all or part of the alimony payments, from the time of the filing of the modification petition until the change in residence. The appropriateness of such relief would, of course, depend on the facts and particularly whether the recipient rebutted the presumption of lack of need during the relevant period.[4]

Husband's arguments also assume that since Mr. Quillen's former wife was successful in *Wright v. Quillen* in having her alimony payments suspended on the basis of Tenn. Code Ann. § 36-5-101(a)(3) and the cohabitation of Ms. Evans and Mr. Quillen, then Husband herein should be entitled to the same relief. This assumption overlooks the differences in fact that the trial court in this case found. The *Wright v. Quillen* case was tried two years before the trial in the case before us. In addition, this assumption (or argument) also fails to recognize the significant holding in *Wright*, which was that the former wife's alimony should be suspended on the basis of clear evidence that Mr. Quillen did not need the alimony.

### A. THE STATUTORY PRESUMPTION

There is no dispute that Ms. Evans and Mr. Quillen had a relationship after her divorce that had lasted a number of years and continued at the time of trial. Ms. Evans did not dispute the fact that she had lived with Mr. Quillen up until shortly after Husband filed his petition for modification of alimony. There is also no dispute that at times in their relationship Mr. Quillen had given Ms. Evans expensive gifts, had paid for trips the couple took, had paid their living expenses when they lived together, and had made loans to Ms. Evans. However, Ms. Evans testified she had moved out

---

[4]In the case before us, Husband has not argued he is entitled to all or part of the two months of alimony he paid from March 13, 2002 to May 14, 2002.

of Mr. Quillen's house and also testified about their current relationship, including the frequency with which they saw each other and his gifts to her, as well as her current financial situation.

The trial court found that while Ms. Evans had lived with Mr. Quillen in the past, she no longer did so; that she had moved out of Mr. Quillen's house; and that she had purchased a condominium and had her address changed on various official records. Our review of the record leads us to conclude that the evidence does not preponderate against the trial court's finding that Ms. Evans was not living with Mr. Quillen.

Many of Husband's arguments call into question the credibility of Ms. Evans's testimony regarding her current living situation, expenses, and relationship with Mr. Quillen. Because trial courts are in a far better position than this court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). Consequently, where issues of credibility and weight of testimony are involved, appellate courts will accord considerable deference to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999) (quoting *Collins v. Howmet Corp.*, 970 S.W.2d 941, 943 (Tenn. 1998)). Stated another way, "The credibility accorded by the trier of fact will be given great weight by the appellate court." *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn. Ct. App. 1987); *see also In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997); *Whitaker*, 957 S.W.2d at 837; *Doe v. Coffee County Bd. of Educ.*, 925 S.W.2d 534, 537 (Tenn. Ct. App. 1996).

Husband vigorously argues that Ms. Evans's purchase of and move to the condominium were essentially a subterfuge and that either Ms. Evans and Mr. Quillen really are living together, intend to live together again as soon as this lawsuit is over, or have the same relationship that they had earlier and that relationship equates to "living together" under the statute.[5] In making these arguments, Husband makes frequent reference to the findings in *Wright v. Quillen* and asserts that the facts surrounding Ms. Evans's relationship with Mr. Quillen were the same at the trial herein as they were at the time of the *Wright* trial. The trial court found otherwise.

As part of his arguments regarding the relationship of Ms. Evans and Mr. Quillen, Husband attempted to introduce into evidence a certified copy of the "Questions of Fact Determined by the Jury" in the *Wright* trial, which included answers to 76 specific questions. Counsel for Wife objected, and the trial court sustained the objection, stating "I don't see any point. I mean, I have the opinion. That's what I'm going to consider."

On appeal, Husband argues that the court's ruling excluding the specific jury findings was in error. He argues that those findings deal in detail with the relationship between Mr. Quillen and

---

[5]At various points, Husband states that the romantic relationship is the same and involves cohabitation; that the only thing that has changed is where Ms. Evans sleeps many nights; and that the more than six year relationship triggers the presumption in Tenn. Code Ann. § 36-5-101(a)(3).

Ms. Evans and, therefore, "shed a great deal of light on the detail, nature, and extent of Ms. Dinah Evans's relationship with Dale Quillen prior to the current litigation." He also argues that the findings in *Wright* would have made more obvious the pattern of Ms. Evans's pretextual actions, such as moving out of Mr. Quillen's house.

Generally, a trial court's ruling on the admissibility of evidence is within the sound discretion of the trial judge. Trial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, and will be overturned on appeal only upon a showing of abuse of discretion. *Rothstein v. Orange Grove Center, Inc.*, 60 S.W.3d 807, 811 (Tenn. 2001); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). We find that the trial court exercised its discretion appropriately.[6]

We find unpersuasive Husband's argument that the relationship between Wife and Mr. Quillen was the equivalent of living together and, therefore, triggered the rebuttable presumption in Tenn. Code Ann. § 36-5-101(a)(3). A stated requirement for the application of the statute is that the alimony recipient "live with" a third person. It does not include some other relationship. *See Azbill*, 661 S.W.2d at 686. The trial court's finding that Ms. Evans was not living with Mr. Quillen, which we have found was supported by the evidence, makes the statute inapplicable. Consequently, the burden of proving grounds for modification remained with Husband.

### B. CHANGE OF CIRCUMSTANCES

Husband also argues that Wife's relationship with Mr. Quillen, accompanied as it was by financial benefit to Wife, was a substantial and material change in circumstances justifying consideration of a modification of his alimony. The trial court did not make a finding regarding this alleged change of circumstance. However, the court did find there was no proof that Mr. Quillen was currently paying money toward Wife's day- to- day expenses or that he intended to. The court also found that Ms. Evans and Mr. Quillen did not intend to marry.

As stated above, a substantial and material change of circumstances must be something that was unforeseeable or unanticipated by the parties at the time of divorce and must affect either the obligor spouse's ability to pay or the obligee spouse's need for support. Whether or not Ms. Evans's relationship with Mr. Quillen meets those criteria is the question.

We cannot conclude that at the time of the parties' divorce it was unforeseeable that either one of them would develop a romantic relationship with another party. Thus, it is not the relationship itself that might constitute a substantial and material change of circumstances. Rather, it is the financial benefit or support that Ms. Evans received from the relationship that we must

---

[6]The specific jury findings in another trial two years earlier, between two different parties, based on evidence presented at that trial are of little, if any, relevance. The issues before the court herein involved a more current situation, and Husband was required to prove facts relative to the current situation. In addition, Ms. Evans did not dispute her prior cohabitation with Mr. Quillen and the impact it had on her expenses, and Husband was free to offer proof on those questions. We fail to see how Husband was harmed by the court's ruling.

9

consider. Clearly, support from a third person, depending on the degree, character, and amount, can affect the recipient's need and may also have been unanticipated by the parties at the time they entered into an MDA setting the amount of support.

In *Wright v. Quillen*, this court stated that the jury found that Mr. Quillen provided support to Ms. Evans. The proof herein indicates that for some period of time Mr. Quillen provided Ms. Evans with housing, utilities, food, and, essentially, her living expenses. There is no question that these items, collectively, are properly characterized as support. However, according to the trial court's findings, this situation changed when Ms. Evans bought and moved into a condominium.

Ms. Evans testified that she used the money she received in the property division from her divorce as a down payment. She has monthly mortgage payments, utility payments, and other daily living expenses. She started a nursing job shortly before the trial herein making $2600 per month.[7] The trial court specifically found there was no proof that Mr. Quillen was providing for Ms. Evans's day-to-day living expenses.

The evidence does not preponderate against the trial court's findings of fact. Consequently, as of the trial Wife was not receiving support from Mr. Quillen. Husband failed to prove a change of circumstances, compared with the date of divorce, that materially affected Wife's need.

The other change of circumstance alleged by Husband is Wife's contribution to their daughter's expenses. With regard to Wife's financial help to her daughter, the trial court found

> The parties were very generous with their daughters, Amy and Jeannie Whitney. The older daughter, Amy, now age thirty-four (34), was educated by the parties at Belmont University and Louisiana State University and she was furnished a vehicle. The younger daughter, Jeannie Whitney, now age twenty-six (26), has been in school for a number of years, and has worked. Jeannie Whitney has a child born out of wedlock, Evan, age four. Jeannie Whitney has had serious medical problems with her heart; and she has had episodes of fainting. This condition is known by the parties. Since the divorce, both parties have expended considerable amounts of money on Jeannie Whitney and her son, Evan. John Whitney Evans, III gave Jeannie Whitney Five Thousand Dollars ($5,000.00) cash in one (1) year, paid expensive dental bills, and paid her health insurance premium through May 2002, as well as reimbursed her for the tuition for school and other expenses. Dinah Petree Evans lived with Jeannie Whitney for a period of time and contributed to her needs by paying part of the rent, paid daycare for the minor child, Evan, paid Jeannie Whitney's condominium payments for a period of time, and other expenses. The Court finds that Dinah Petree Evans has not helped Jeannie Whitney since May of 2002 with the exception of paying Jeannie Whitney's monthly cell phone bill, which

---

[7]Ms. Evans's employment, and the income she receives from it, cannot be used by Husband to justify a modification of alimony under the terms of the MDA.

was a Christmas gift to Jeannie Whitney, and paying One Hundred Nineteen Dollars and Forty Cents ($119.40) per month for Jeannie Whitney's health insurance. The parties had discussed and agreed that they could not allow Jeannie Whitney's health insurance to be terminated because of her inability to obtain insurance in the future without exclusions for her serious pre-existing condition.

In John Whitney Evans, III's testimony, he revealed that he had no problem with Dinah Petree Evans spending her alimony payments for the benefit of daughter, Jeannie Whitney, and grandson, Evan; and it was her money to do as she pleased. On redirect while John Whitney Evans, III didn't mind Dinah Petree Evans doing this, he didn't want her to fund it with the alimony payments. It is clear to this Court that both parties expended sums of money on Jeannie Whitney as they felt that she needed and deserved help; and John Whitney Evans, III never opposed Dinah Petree Evans spending money for the benefit of the adult child, Jeannie Whitney, and grandchild, Evan. From the testimony, these expenditures for their daughter and her minor child were done with the acquiescence and support of John Whitney Evans, III, until he filed his Amended Petition in August of 2002.

Based on these findings, the trial court determined that the parties had anticipated continuing to help their children financially and, therefore, Wife's financial support to Jeannie was not unforeseeable or unanticipated. The evidence supports the trial court's factual findings, and we affirm the holding that Husband failed to prove a substantial and material change of circumstances in Wife's helping their daughter with expenses.

## C.  WIFE'S NEED FOR ALIMONY

Even if the court had found that Ms. Evans was living with Mr. Quillen and was being supported by him, those findings would have merely shifted to Wife the burden to rebut the presumption that she did not need the amount of alimony previously awarded. Similarly, even if there had been a substantial and material change of circumstances, Husband still had the burden to prove that suspension or reduction of his alimony payments was warranted. That determination would require consideration of the factors relevant to an initial award of alimony, *see* Tenn. Code Ann. § 36-5-101(d)(1), including primarily Wife's need and Husband's ability to pay.[8]

Husband's ability to pay had not changed, he was still receiving over $10,000 per month in tax free disability insurance payments and had no housing costs. Husband stipulated that his ability to pay was not at issue.

---

[8]Because support can be ordered in the first place only where one spouse is economically disadvantaged relative to the other spouse, the material change of circumstances analysis should include, at a minimum, consideration of whether there has been significant change in the economic disparity between the parties.

The trial court found that Ms. Evans had a continuing need for the alimony, finding that she was in need of alimony, as well as her nursing salary, in order to meet her expenses, which the court specifically found to be reasonable. According to Wife's Statement of Income and Expenses, her monthly net income is $ 4,703.53,[9] and her total monthly expenses and payments total $ 4,701.35.

The trial court also found that Ms Evans had used the money remaining from her share of the sale of marital property to make a down payment on the condominium and that she had no retirement. Thus, she had no resources remaining from the distribution of marital property. Her late re-entry into the nursing profession certainly limits her ability to build up a retirement fund.

Based upon the trial court's findings of fact, which we find are supported by the evidence in the record, we affirm the trial court's holding that Wife was in need of the continuing alimony payments that the parties had agreed to at the end of their twenty-five year marriage.

Accordingly, we conclude that the trial court acted within its discretion in declining to modify the alimony *in futuro* and we affirm the court's judgment.

### III. ATTORNEY'S FEES

Husband complains that the trial court erred in awarding Wife her attorney's fees incurred in defending his petition for modification. Tennessee follows the American Rule requiring litigants to pay their own attorney's fees in the absence of a statute or contractual provision otherwise. *State v. Brown* & *Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998); *see also Penland v. Penland*, 521 S.W.2d 222, 225 (Tenn. 1975). Here, the trial court awarded Ms. Evans attorney's fees under Tenn. Code Ann. § 36-5-103(c) "since she has been required to expend funds for attorney's fees to enforce the divorce decree."

Our courts have not been entirely clear or consistent in stating the statutory basis for the award of attorney's fees in cases involving spousal support generally, or in cases involving efforts to modify support specifically. Our review of the treatment of attorney's fees in modification cases begins with those specifically citing the statute at issue.

### A. MODIFICATION OF SUPPORT CASES RELYING ON TENN. CODE ANN. § 36-5-103(c)

Some modification of alimony cases base attorney fee decisions on Tenn. Code Ann. § 36-5-103(c), the statute relied upon by the trial court in the case before us. That statute provides:

> (c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for

---

[9]Alimony accounts for $3466.67 of her monthly income, and her nursing job accounts for $ 1236.86.

alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

By its language, the statute applies to actions to enforce child support and alimony awards as well as to any action involving child custody. Accordingly, courts have interpreted the statute as allowing attorney fees to custodial parents in custody modification proceedings, *Gaddy v. Gaddy*, 861 S.W.2d 236, 240-41 (Tenn. Ct. App. 1992) (awarding fees to father who successfully petitioned for a change of custody); *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1993) (awarding legal expenses to custodial parent who defended unwarranted action to change custody), and to custodial parents who have brought actions to enforce prior child support awards, *Holt v. Holt*, 995 S.W.2d 68, 78 (Tenn. 1999) (using Tenn. Code Ann. § 36-5-103(c) to award fees on appeal to mother who enforced divorce decree requiring father to maintain life insurance policy to secure his child support obligation); *Harris v. Harris*, 83 S.W.3d 137 (Tenn. Ct. App. 2002).

In addition, Tenn. Code Ann. § 36-5-103(c) has been used as authority to award fees to custodial parents who have successfully sought increases in child support, *Huntley v. Huntley*, 61 S.W.3d 329 (Tenn. Ct. App. 2001) (interpreting the statute as giving courts authority to award fees in child support modification cases generally), as well as to parents who successfully defend an obligor parent's efforts to reduce a child support obligation. *Beck v. Beck*, No. 01A01-9710-CV-00547, 1998 WL 136130, at *2 (Tenn. Ct. App. March 27, 1998) (no Tenn. R. App. P. 11 application filed); *Breeding v. Breeding*, No. 289, 1990 WL 198900, at *2 (Tenn. Ct. App. Dec. 12, 1990) (application for perm. app. dismissed Apr. 8, 1991) (holding that Tenn. Code Ann. § 36-5-103(c) authorizes recovery of fees incurred in enforcing a child support order and, implicitly, equating enforcement with defending the order).

Despite the language in the statute differentiating between "any" action involving custody and actions to "enforce" child support (and its language limiting awards to parties with custody), courts have generally treated custody and child support similarly in terms of awarding fees under the statute.[10] This interpretation springs from *Deas v. Deas,* 774 S.W.2d 167 (Tenn. 1989), wherein a mother successfully sought to modify the existing joint custody arrangement to give her sole custody and also sought to increase child support in accordance with the new custody arrangement. In discussing the father's appeal of the trial court's award of fees to the mother, the court stated, "In all cases involving the custody and support of children, however, it has long been the rule in this state that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." *Id.* at 169. In support of this statement, the Court relied upon *Graham v. Graham*, 140 Tenn. 328, 204 S.W. 987 (1918), a case which predated the enactment of Tenn. Code Ann. § 36-5-103(c). In that case, the Supreme Court awarded a mother, for the benefit of her two children, child

---

[10]Many cases, of course, involve both issues since a change in custody or visitation triggers re-consideration of support obligations and since cross-petitions for relief are often filed.

support from her former spouse on the ground that a father has a natural and legal duty to furnish his children the necessities of life. The *Graham* court's holding requiring the father to pay attorney's fees was based upon equitable and public policy principles:

> The same reason which allows a wife counsel fees in a suit for divorce applies with full force to this case.[11] There is a sound public policy which places in easy reach of the minor child the machinery of the law to compel their rights by suit against an unwilling father. The right to have him pay reasonable counsel fees is inseparable from this right.

*Id*., 140 Tenn. at 334-35, 204 S.W. at 989.[12]

The Court in *Deas*, however, also relied on Tenn. Code Ann. § 36-5-103(c), which it interpreted as authorizing the recovery of attorney's fees "in child support and custody matters." Noting that the statute makes the award of fees discretionary with the trial court, the Court also stated, "There is no absolute right to such fees, but their award in custody and support proceedings is familiar and almost commonplace." *Deas*, 774 S.W.2d at 170.[13]

Although the Supreme Court did not explicitly state in *Deas* that Tenn. Code Ann. § 36-5-103(c) codified the common law authority of the courts to award fees in child custody or child support proceedings as espoused in *Graham*, this court has so held. *Sherrod*, 849 S.W.2d at 784. In discussing the factors to be considered in the exercise of the discretion given the trial court under Tenn. Code Ann.§ 36-5-103(c), the court in *Sherrod* reiterated that the purpose of fee awards in child support cases was to protect the child's, not the parent's, interests and remedies. *Id.* at 785.

---

[11]Historically, an award of attorney's fees in divorce cases was based on the theory that the wife was entitled to an award of attorney's fees because, where the husband provided the only financial support to the family, the award of attorney's fees allowed the wife access to the court system.

> It was established over a century ago that trial courts have wide discretion in requiring a husband to pay for the reasonable necessities of his wife, including expenses of divorce litigation. The right to an allowance of legal expenses is not absolute. It is conditioned upon a lack of resources to prosecute or defend a suit in good faith. This rule is to enable the wife, when destitute of means of her own, to obtain justice and to prevent its denial. *Thompson v. Thompson*, 40 Tenn. 527, 529 (1859). If a spouse does not have separate property of her own which is adequate to defray the expenses of suit, certainly she should not be denied access to the courts because she is unable to procure counsel.

*Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983). *See also* BENSON TRIMBLE, TENNESSEE DIVORCE AUTHORITIES § 4-8 (1966).

[12]Now, a child has a right to support from both parents, regardless of gender. *Smith v. Gore*, 728 S.W.2d 738, 750 (Tenn. 1987); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 247 (Tenn. Ct. App. 2000).

[13]*See also Brooks v. Brooks*, 992 S.W.2d 403, 408 (Tenn. 1999)(awarding fees made necessary by the appeal to the mother who obtained an increase in child support, without mention of the basis of the award).

14

Consequently, "requiring parents who precipitate custody or support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy." *Id*.

Notwithstanding the language of the statute itself (which actually distinguishes between custody matters and support enforcement actions), its interpretation as applying generally to all child support and custody cases has been expanded into broad statements that it authorizes fee awards that are incurred to vindicate a child's right to support or to secure a child's financial well being, whether the party requesting the fees is defending or enforcing a child support obligation, on the ground that the award of fees is for the benefit of the child and is a necessary part of, or inseparable from, the child's right to support. *See, e.g., Harris*, 83 S.W.3d 137; *Huntley*, 61 S.W.3d at 341; *Chorost v. Chorost*, No. M2000-00251-COA-R3-CV, 2003 WL 21392065, at *12 (Tenn. Ct. App. June 17, 2003) (no Tenn. R. App. P. 11 application filed); *Sandusky v. Sandusky*, No. M2000-00288-COA-R3-CV, 2001 WL 327898, at *9 (Tenn. Ct. App. April 5, 2001) (no Tenn. R. App. P. 11 application filed). Or, even more generally, "Where the services of a parent's attorney inure to the benefit of a minor child or children, the award of reasonable attorney's fees is in order." *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993).[14]

With regard to cases involving post-divorce alimony disputes, Tenn. Code Ann. § 36-5-103(c) clearly authorizes a recovery of reasonable attorney's fees incurred in enforcing an order awarding alimony. *Brewer v. Brewer*, 869 S.W.2d 928, 936 (Tenn. Ct. App. 1993) (involving both an action for arrearages and a counteraction to terminate or reduce alimony).[15] Whether or not an alimony recipient who defends an action to reduce that alimony is entitled to an award of fees under the statute is the question raised herein. Husband argues that Wife's defense against his modification petition was not an enforcement action envisioned by Tenn. Code Ann. § 36-5-103(c) since he never failed to pay alimony as ordered and was not in arrears and also that Wife was not a plaintiff spouse and thus not entitled to fees under the statute.

---

[14]Even in custody and child support cases, however, the language of the statute itself has sometimes been used to determine whether a parent is entitled to fees. In *Placencia v. Placencia*, 3 S.W.3d 497 (Tenn. Ct. App. 1999), a mother who was unsuccessful on appeal in a petition to change custody was found ineligible under Tenn. Code Ann. § 36-5-103(c) because she was not "the spouse or other person to whom the custody of the child, or children, is awarded." *Id*. at 504. *See also Glanton v. Glanton*, No. 01-A01-9601-PB00013, 1996 WL 502136 (Tenn. Ct. App. Sept. 6, 1996) (no Tenn. R. App. P 11 application filed) (holding that a father who defended a contempt action for failing to pay child support as previously ordered, even though successful in having mother's petition dismissed, was not entitled to fees under Tenn. Code Ann. § 36-5-103(c) because he was a defendant spouse, not a plaintiff spouse, in the enforcement action and the statute did not authorize a defendant spouse to recover fees).

[15] In *Brewer*, the former wife brought an action for contempt and an award of arrearages and the former husband counterclaimed for a reduction of alimony. The alimony was reduced, and the court determined that the wife had waived her right to claim the amount she now demanded. Under those circumstances, this court held that the trial court did not abuse its discretion in denying wife's request for attorney's fees.

15

In *Campbell v. Campbell*, No. 02A01-9803-CH-00073, 1998 WL 959669 (Tenn. Ct. App. Nov. 4, 1998) (no Tenn. R. App. P. 11 application filed), this court affirmed the trial court's award of attorney's fees to a wife who successfully defended her former husband's action to modify alimony, stating that Tenn. Code Ann. § 36-5-103(c) authorizes recovery of reasonable attorney's fees in the enforcement of an alimony order. *Id.* at *6. Again, this statement implicitly equates enforcing with defending an attempt to reduce. *See also Milam v. Milam*, No. M2001-00498-COA-R3-CV, 2002 WL 662026, at * 4 (Tenn. Ct. App. Apr. 23, 2002) (Tenn. R. App. P. 11 application denied) (holding, in an action to reduce alimony and child support, that Tenn. Code Ann. § 36-5-103(c) allows the award of fees "to one party or the other" in cases involving enforcement of alimony or child support orders).

This court has specifically addressed the issue of whether an alimony recipient who defends an action to reduce or terminate alimony qualifies under the language of the language of the statute a very few times. In those cases, we have reached contradictory conclusions. In *Duke v. Duke*, Nos. M2001-00080-COA-R3-CV, M2002-00026-COA-R3-CV, 2003 WL 113401 (Tenn. Ct. App. Jan. 14, 2003) (no Tenn. R. App. P. 11 application filed),[16] this court rejected the husband's argument that the statute did not permit the court to award attorney's fees to a defendant spouse, and found that "the key [to interpreting the statute] is the words 'enforcing any decree for alimony or child support. . .' A spouse who defends a petition to change an alimony or child support order is acting to enforce it." *Id..* at *5.

A different conclusion was reached in *Billingsley v. Billingsley*, W1999-00338-COA-R3-CV, 2000 WL 33128642 (Tenn. Ct. App. Oct. 9, 2000) (no Tenn. R. App. P. 11 application filed), which also involved a former husband's unsuccessful attempt to modify an alimony *in futuro* award. The alimony recipient asked this court to award her attorney's fees necessitated by the appeal. Relying on Tenn. Code Ann. § 36-5-103(c), this court found that Wife was neither the "plaintiff spouse" nor was she seeking to "enforce" the decree for alimony but was rather defending her alimony award. *Id*. at *3. Finding neither a statutory nor contractual basis to award Wife attorney's fees, the court found she was not entitled to an award of attorney's fees on appeal.[17]

We agree with the approach in *Campbell* and *Duke*. There is no justification in the language of the statute itself for treating enforcement of alimony orders differently from enforcement of child support orders. Therefore, the broad interpretation given the statute, based upon its incorporation

---

[16]In *Duke*, the former husband sought to modify an alimony *in futuro* award. This court converted the alimony award from *in futuro* to one for rehabilitative alimony. In addition, this court reversed the award of attorney's fees awarded under Tenn. Code Ann. § 36-5-103(c) to wife, not because she was ineligible under the statute, but because we found that the equities were "pretty evenly divided . . .and that they should each pay the fees of their own attorneys." *Duke*, 2003 WL 113401 at *5.

[17]The court relied on *Glanton*,1996 WL 502136, discussed earlier, wherein we reversed an award of attorney's fees in an action to enforce child support, finding that "the statute [Tenn. Code Ann. § 36-5-103(c)] does not state that a '*defendant*' spouse may recover from a '*plaintiff*' spouse." *Id*. at *3.

16

of the common law, in the context of child support orders should also apply to spousal support orders. Additionally, the public policy considerations and common law roots that support a broad interpretation of Tenn. Code Ann. § 36-5-103(c) in the child support context apply with equal force to spousal support. Alimony is only awarded in the first instance to an economically disadvantaged spouse who has a demonstrated need for the support. Absent a showing in a modification proceeding that the need no longer exists, requiring the recipient to expend that support for legal fees incurred in defending it would defeat the purpose and public policy underlying the statute on spousal support. Additionally, the possibility of being burdened with a former spouse's attorney's fees helps deter unwarranted or unjustified attempts by an obligor to evade or reduce an existing support obligation.[18]

Accordingly, based on previous holdings, we conclude Tenn. Code Ann. § 36-5-103(c) authorizes a court to award attorney's fees to an alimony recipient who is forced to defend an action to reduce or terminate that alimony.[19]

However, even if we agreed with the interpretation in *Billingsley*, that would not preclude a former spouse who defends a modification action from an award of fees based on authority other than Tenn. Code Ann. § 36-5-103(c). Prior cases have not examined whether the enforcement statute, Tenn. Code Ann. § 36-5-103(c), by its language is properly applied to actions to modify, rather than enforce, a prior order. We think the language of the statute clearly answers the question negatively. The statute speaks in terms of a "plaintiff spouse" recovering from a "defendant spouse" fees incurred in "enforcing" a support order. Clearly, the statute refers to actions to compel compliance with existing orders to pay support. An action to modify upward or downward an existing support obligation is not included in that description. Thus, although we have relied on former holdings to affirm an award to a spouse who defends a support order, we think the better

---

[18]The Tennessee Supreme Court has recently considered Tenn. Code Ann. § 36-5-103(c) and concluded "that parties to whom attorney's fees may be awarded pursuant to this statute may also have attorney's fees awarded against them when their petition is unsuccessful." *Toms v. Toms*, 98 S.W.3d 140, 145 (Tenn. 2003). That holding was made in the context of an award to a mother who successfully defended a petition for custody filed by her child's grandparents who intervened in the parents' divorce action. The Court held that although the custody portion of the statute spoke in terms of recovery from a spouse, it also gave the right to recover fees to any person to whom custody is awarded. Consequently, had the intervening grandparents been successful in gaining custody, they would have been entitled to recover fees from the mother or the father. The Court concluded the language of the statute supported an award of fees from the intervenor third parties. While we recognize that the holding in *Toms*, does not limit itself to custody disputes, we cannot find a basis to expand it to support enforcement actions. Although the statute states that fees in custody matters may be awarded against the "other spouse," its provision on custody actions does not include the "enforcing any decree" language applicable to support orders.

[19]Fees awarded under Tenn. Code Ann. § 36-5-103(c) may not be subject to the same requirements as fees awarded on another basis. Both *Gaddy* and *Sherrod* held that financial need or inability to pay fees is not a prerequisite under the statute, at least insofar as child support is involved, distinguishing fees awarded under Tenn. Code Ann. § 36-5-103(c) from those awarded in conjunction with an initial award of support. *Sherrod*, 849 S.W.2d at 785; *Gaddy*, 861 S.W.2d at 241. *See also Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993) (holding the rule of financial inability to pay the fees applies in alimony proceedings, but not child support and custody, but failing to confine this difference to modification actions or explain the basis for the difference.)

reasoning is that attorney's fees in modification actions are not governed by Tenn. Code Ann. § 36-5-103(c).[20]

If that statute does not apply to authorize an award of attorney's fees in a modification of support action, other bases for such award exist. As set out below, those other bases have frequently been used.

## B. OTHER BASES FOR FEES IN MODIFICATION PROCEEDINGS

In modification of alimony cases, several bases have been used as authority for an award of attorney's fees. Sometimes, no basis for the award of fees has been explicitly stated. For example, in *Elliot*, 825 S.W.2d at 92, this court dismissed the former husband's petition to modify alimony and affirmed the trial court's award of attorney's fees to the former wife, merely stating that the trial court is vested with wide discretion in the allowance of fees,[21] citing *Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn. Ct. App. 1987). *Threadgill* involved a former wife's efforts to enforce, through contempt and an award of arrearages, a prior alimony award and the former husband's request to modify downward his alimony obligation under that prior award. Regarding the trial court's award of part of the wife's attorney's fees, this court only stated that such awards rest in the discretion of the trial court and there was no showing in the record of an abuse of that discretion, and cited no other basis for the award. *Id*. at 426. Similarly, in *McCarty v. McCarty*, 863 S.W.2d 716, 722 (Tenn. Ct. App. 1993), this court reversed a trial court's reduction of alimony and refusal to increase child support. In reversing the trial court's denial of attorney's fees to the alimony recipient, after recounting the general principles regarding discretion of the trial court and the requirement that the recipient need such an award in order to pay her fees, we found that the recipient "should not have to pay the cost of defending her entitlement to alimony and asserting her child's right to increased support payments" in view of her financial situation. No specific authority for the award was stated.

In a number of other modification cases, the court has simply relied on the general principles applicable to attorney's fees in divorce cases and on opinions involving initial awards. For example, in *Sanella v. Sanella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999), this court affirmed an award of attorney's fees to a former wife who successfully defended her former husband's request to reduce his alimony obligation on the basis of the principles applicable to fees in a divorce and initial award, including the inability of the spouse to pay legal expenses. *See also Cranford*, 772 S.W.2d at 52 (holding that alimony recipient who defended former spouse's action to terminate alimony was entitled to attorney's fees because such fees are deemed alimony and recipient lacked sufficient resources to pay fees).

---

[20]Of course, many cases involve both modification and enforcement, generally as a result of responsive pleadings raising counterclaims. In that situation, the court should separate its holdings and the basis for an award of fees.

[21]The court also noted that it was the former husband who had brought the litigation forcing the wife to seek counsel.

Similarly, in *Seal v. Seal*, 802 S.W.2d 617 (Tenn. Ct. App. 1990), involving a former husband's second attempt to reduce his alimony, this court recognized the discretion of the trial court in awarding fees "in divorce actions" and noted that if the wife has adequate funds for her needs as well as for payment of attorney's fees, an award of such fees is not required. *Id.* at 623. However, because this court reversed the trial court's rulings against the wife, and because the wife had "had to fend off two legal broadsides fired by Husband in a period of three and a half years seeking to substantially reduce his financial obligations to her," this court reversed the trial court's denial of attorney's fees to the successful alimony recipient. *Id.* The court also stated, "As stated so aptly by counsel for Wife, she should not have to pay the cost of defending her entitlement to alimony and child support payments." *Id.* at 624. The court also held that the former wife did not have adequate funds from her income with which to pay a substantial portion of her attorney fees.

Thus, in a number of opinions, our courts have not distinguished between an initial award of alimony and a post-divorce modification proceeding; they have simply treated the later proceeding as a divorce or support matter on the theory it was a continuation of the original proceeding. This approach is not inconsistent with Tenn. Code Ann. § 36-5-101(a)(1) which, in addition to authorizing courts to order support when a marriage is dissolved, also states that such an order remains in the court's control and may be increased or decreased upon a showing of substantial and material change of circumstances.

We conclude that ample authority exists to authorize a court to award fees in a modification proceeding on the same basis, and according to the same principles, as a fee award is made in the divorce proceeding and initial award under in Tenn. Code Ann. § 36-5-101. Therefore, there exists a legal ground for the award of fees herein that is alternative, or additional, to the ground relied upon by the trial court.

It has become well settled that an award of attorney's fees in divorce cases is considered alimony or spousal support, generally characterized as alimony *in solido*. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001); *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992).[22] Like other spousal support, an award of attorney's fees is available to either spouse.[23]

---

[22]We have discovered no opinions in which the Tennessee Supreme Court has explicitly stated that attorney's fees are spousal support. However, the Court has implicitly found that to be the case by holding that the factors listed in Tenn. Code Ann. § 36-5-101(d)(1), *i.e.*, factors relevant to the court's consideration of an award of alimony, must also be considered in the award of attorney's fees. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 750-51 (Tenn. 2002). Similarly, in *Inman v. Inman*, 811 S.W.2d 870, 874 (Tenn. 1991), the Court found that because of the property award to the wife, an award to her of either alimony or attorney's fees was "neither necessary or appropriate" under the statutory factors relative to alimony.

Further, in both *Robertson v. Robertson*, 76 S.W.3d 337, 344 (Tenn. 2002), and *Burlew v. Burlew*, 40 S.W.3d 465, 473 (Tenn. 2001), the Court affirmed the attorney's fee holdings of the Court of Appeals without further discussion. In both those cases, the Court of Appeals specifically held that attorney's fees in divorce cases were in the nature of or treated as alimony. *Robertson v. Robertson*, No. 03A01-9711-CV-00511, 1998 WL 783339, at *8 (Tenn. Ct. App. Nov.

(continued...)

19

Because attorney's fees are considered alimony or spousal support, an award of such fees is subject to the same factors that must be considered in the award of any other type of alimony. *Yount*, 91 S.W.3d at 783; *Lindsey v. Lindsey*, 976 S.W.2d 175, 181 (Tenn. Ct. App. 1997). Therefore, the statutory factors listed in Tenn. Code Ann. § 36-5-101(d)(1) are to be considered in a determination of whether to award attorney's fees. *Langschmidt*, 81 S.W.3d at 751; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992).

Initial decisions regarding the entitlement to spousal support, as well as its amount and duration, hinge on the unique facts of each case and require a careful balancing of all relevant factors. *Robertson*, 76 S.W.3d. at 338; *Watters*, 22 S.W.3d at 821; *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998). Among these factors, the two considered to be the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342; *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001). Of these two factors, the disadvantaged spouse's need is the threshold consideration and the "single most important factor." *Aaron*, 909 S.W.2d at 410 (quoting *Cranford v. Cranford*, 772 S.W.2d at 50); *see also Bogan*, 60 S.W.3d at 730 (holding that in an initial award, the need of the spouse "must necessarily be the most important factor to consider, because alimony is primarily intended to provide some minimal level of financial support for a needy spouse," but in modification decisions that single factor cannot be given greater weight than all other factors.)

Recently, the Supreme Court reaffirmed the holding in *Fox* that an award of attorney's fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith . . ." and that such an award is to ensure access to the courts. *Langschmidt*, 81 S.W.3d at 751 (quoting *Fox*, 657 S.W.2d at 749). Consequently, a spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorney's fees and expenses. *Lindsey*, 976 S.W.2d at 181; *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984). If a party has adequate property and income, or is awarded adequate property in the divorce, from which to pay his or her own expenses, an award of attorney's fees may not be appropriate after consideration of all relevant factors. *Wilder*, 66 S.W.3d at 895; *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000); *Houghland*, 844 S.W.2d at 623-24; *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). The award of attorney's fees as additional alimony is most appropriate where the divorce does not provide the obligee spouse with a source of funds, such as from property division, with which to pay his or her attorney's fees. *Yount*, 91 S.W.3d at 783. Additionally, if a spouse receives alimony as

---

[22](...continued)
9, 1998); *Burlew v. Burlew*, No. 02A01-9807-CH-00186, 1999 WL 545749, at * 16 (Tenn. Ct. App. July 23, 1999). While in *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995), the Court simply stated that the allowance of attorney's fees in divorce cases is largely within the discretion of the trial court, it relied on *Storey*, 835 S.W.2d at 597.

[23]*See Mitchell v. Mitchell*, 594 S.W.2d 699 (Tenn. 1980) (explaining that the prior gender-based support statutes were unconstitutional under the United States Supreme Court's holding in *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102 (1979) and the Tennessee General Assembly's correction of the constitutional defect by enactment of statutes allowing award or payment of alimony from either spouse regardless of gender).

a result of the divorce and will be forced to deplete those funds, designed to sustain that spouse, just in order to pay attorney's fees, an award of fees is appropriate. *Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988).

The view that attorney's fees are a form of spousal support supplies the statutory authority for their award because alimony or spousal support is authorized by statute. A number of cases cite as the basis for attorney's fees as an award of alimony Tenn. Code Ann. § 36-5-101(a)(1), which authorizes courts to order "suitable support and maintenance of either spouse by the other spouse . . . according to the nature of the case and the circumstances of the parties. . . ." *See, e.g.*, *Inman*, 811 S.W.2d at 874; *Mitts v. Mitts*, 39 S.W.3d 142, 147 (Tenn. Ct. App. 2000); *Smith v. Smith*, 912 S.W.2d 155, 160-61 (Tenn. Ct. App. 1995); *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1989). *See also* JANET L. RICHARDS, RICHARDS ON TENNESSEE FAMILY LAW § 14-3(a)(2) (1997).

## C. DISCRETION OF TRIAL COURT

We have found that Wife was eligible for an award of attorney's fees on two statutory bases. Eligibility, however, does not end the inquiry. As the courts have repeatedly made clear, the decision of whether or not to award fees in support modification proceedings is discretionary with the trial court, regardless of the legal authority for the award. *Deas*, 774 S.W.2d at 170; *Sannella*, 993 S.W.2d at 77; *Brewer*, 869 S.W.2d at 936; *McCarty*, 863 S.W.2d at 722; *Elliot,* 825 S.W.2d at 92.

Consequently, a decision on attorney's fees will be reviewed on an abuse of discretion standard. Under the abuse of discretion standard, a trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

No precise parameters have been set for the exercise of discretion, but, generally, an award of fees should be "just and equitable under the facts of the case." *Sherrod*, 849 S.W.2d at 785 (discussing discretion under Tenn. Code Ann. § 36-5-103(c). A number of opinions also consider significant the fact that the alimony recipient was required to hire counsel to defend the action to reduce or eliminate that support. A common theme throughout these cases is the view that the successful alimony recipient should not have to pay the cost of defending his or her entitlement, especially if that payment would necessarily come from the support the recipient needs for routine living expenses. Another factor frequently considered is whether the attempt to reduce or terminate alimony was unwarranted. Each decision should be based on the unique facts of each case.

In the case before us, we cannot say that when Husband filed his petition it was unwarranted or without basis. Husband maintains that his petition was filed in good faith and triggered by Wife's cohabiting with Mr. Quillen and this court's decision in *Wright v. Quillen.* It is undisputed that at the time the petition was filed Wife was living with a third party and being supported in large part by that third party. The facts at that time clearly justified an action based on the cohabitation statute. The fact that the petition triggered action by Wife to end the cohabitation and support does not make the initial filing unwarranted. As demonstrated by the arguments made herein, the question of

whether Wife's moving out was real or a subterfuge was hotly contested.  The trial court chose to credit Wife's testimony on this issue.

Based upon the facts of this case and prior holdings regarding the factors to be considered and the equities to be weighed, we conclude that Husband should not have been required to pay Wife's attorney's fees.  Consequently, we reverse the trial court's award of fees to Ms. Evans.

## CONCLUSION

We affirm the trial court's denial of Husband's petition for modification of spousal support and reverse the award of attorney's fees to Ms. Evans.  Costs of this appeal are taxed equally to the appellant, John Whitney Evans, III, and the appellee, Dinah Petree Evans.


                              _____
                              PATRICIA J. COTTRELL, JUDGE