IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 18, 2004 Session

## REBECCA PAIGE MULKEY (HURD) v.
## BRADLEY WARREN MULKEY

**Appeal from the Circuit Court for Hawkins County**
**No. 7576     Ben K. Wexler, Judge**

**No. E2004-00590-COA-R3-CV - FILED OCTOBER 28, 2004**

Rebecca Paige Mulkey ("Mother") and Bradley Warren Mulkey ("Father") were divorced in 1996. The parties agreed that Mother would be the primary residential parent of their two minor daughters with Father having reasonable visitation rights. Several years later and after Mother had remarried, Father filed a Petition for Change of Custody claiming the older child had been physically abused by her step-father. The Trial Court temporarily transferred custody of the children to Father and indicated this arrangement would be reviewed periodically. After the older child recanted her allegations of physical abuse, the Trial Court ordered that she be examined by a psychiatrist. An examination was undertaken and the psychiatrist concluded there was no evidence of abuse "of any kind." The Trial Court later entered a judgment and held that its previous temporary decision to designate Father as the primary residential parent was to be the final determination. Mother appeals claiming the Trial Court erred when it transferred custody of the children to Father because Father failed to prove there had been a material change in circumstance. We agree and reverse the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Reversed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which SHARON G. LEE, J., joined. HERSCHEL P. FRANKS, P.J., filed a separate concurring opinion.

Stephen L. Gilly, Kingsport, Tennessee, for the Appellant Rebecca Paige Mulkey (Hurd).

R.B. Baird, III, Rogersville, Tennessee, for the Appellee Bradley Warren Mulkey.

**OPINION**

**Background**

Mother was granted a divorce from Father in May of 1996 based upon Father's inappropriate marital conduct. The parties have two minor daughters who were one and three years old at the time of the divorce. The parties entered into a Marital Dissolution Agreement which provided that they were to have joint legal custody of the children, with Mother being the primary residential parent and Father having reasonable visitation rights. The Marital Dissolution Agreement was "ratified and approved" by the Trial Court.

In March of 2001 and after Mother had remarried, Father filed a Petition for Change of Custody.[1] In this Petition, Father claimed that the parties' daughters had made allegations of physical abuse concerning Mother and their step-father. According to Father, these allegations were being investigated by the Department of Children's Services. Father claimed there had been a material change of circumstances and that it was in the best interests of the children for him to be designated their primary residential parent. Mother filed an answer to the Petition denying the pertinent allegations contained therein.

After a hearing on the Petition for Change of Custody, the Trial Court entered an order concluding that the children should stay with Mother until the end of the school year, at which time the primary residence was "to be changed to the Father for the summer months." Mother was granted standard visitation rights during the summer months and was ordered to pay child support. The Trial Court stated that the custody arrangement would be reviewed further in September or October of 2002.

It was the parties' older child who made the allegations of physical abuse. This child later completely recanted these allegations. As a result of these inconsistencies, in July of 2002 the Trial Court ordered the older child to be examined by a psychiatrist. The older child thereafter was examined by Dr. Kutty in Kingsport and his report was filed with the Trial Court. This report states, in part, as follows:

> [The child has] made it clear that she wants to stay with her father at this point … [However, she] feels guilty about her decision to live with her father. She is angry at herself and has made statements to the effect she hates herself and wishes she was never born. She feels bad that she has caused a lot of trouble to her mother. She wrote a letter to her mother and [step-father] expressing her regrets about her behavior. She has reaffirmed her love for both of them.…

---

[1] This was Father's second attempt to seek primary custody of the children. His first attempt was denied by the Trial Court on December 22, 1998.

Based upon my evaluation … she does not suffer from any major psychiatric disorders. She seems to be anxious and very sensitive to stressful events and has a tendency to worry some. This has become worse as a result of the ongoing conflicts between her parents. From my examination it does not appear that she has been subjected to abuse of any kind.… She has exploited the conflict that is existing between her parents to her advantage by escaping from one environment to another. This is not unlike what one sees in nuclear families when a child plays one parent against the other.… It is my recommendation that given the above family dynamics that we allow the present living arrangement to continue.… [The oldest child and Mother] need to spend more time and enter into counseling to help them improve their relationship and for [the child] to overcome her anxieties and fears.…

While the above report focuses on the older child, Dr. Kutty apparently evaluated both children on more than one occasion. While other reports were prepared by Dr. Kutty, they have not been included in the record on appeal.

The next hearing was held in October of 2002 and the Trial Court entered its Order in December. The Trial Court was provided with a copy of Dr. Kutty's report at this hearing. Although Father again was designated as the primary residential parent, the Trial Court "doubled" Mother's visitation with the younger child. Mother's visitation with the older child was set at three days every other week. The Trial Court reserved the matter of child support at that time.[2]

Although there were several hearings where the Trial Court heard from one or more witnesses, the only transcript in the record containing testimony is from a hearing held on November 24, 2003. At this hearing, Mother testified that she currently was employed by the State of Tennessee and worked as a case manager for delinquent, abused, and neglected children. Mother testified that whenever she sees her children outside of her regular visitation such as at a grocery store or the like, Father does not allow the children to speak to her. Mother claimed that when she attempts to call the children, she either gets a busy signal, there is no answer, or she is told by Father that she cannot speak to them. According to Mother, when the children arrive for her visitation, their personal hygiene "is horrible." Mother also claimed that when Father has the children, he forbids them from having any contact with any of Mother's family members.

Mother's current husband, Mike Hurd ("Hurd"), also was called as a witness. Hurd denied ever physically abusing or yelling at the children. Hurd testified to the activities in which he, Mother, and the children engage in on the weekends when Mother has visitation.

---

[2] Mother appealed the December Order to this Court, but we dismissed her appeal because there was no final judgment.

Not surprisingly, Father denied ever making any attempts to prevent Mother from talking to the children or otherwise interfering with her exercise of visitation. Father testified to his version of the events detailed by Mother regarding a few episodes where Father allegedly prevented Mother from seeing one or both of the children. Father testified the children are bathed on a regular basis and denied Mother's claim that the children had poor personal hygiene.

After the testimony of the witnesses was completed, the Trial Court talked to the children *in camera*. The parties' attorneys were present, but the court reporter was not. This Court has not been provided with a transcript of the *in camera* testimony and neither party has furnished a Tenn. R. App. P. 24(c) statement of the evidence summarizing the *in camera* testimony of the children.

After the November 2003 hearing, the Trial Court entered an Order which maintained the then existing custody arrangement. More specifically, Father was designated as the primary residential parent and Mother was given visitation rights consistent with what had been set forth previously. As to each of the hearings prior to the November 2003 hearing, we can only conclude that the Trial Court intended for its decision to change custody to be temporary in nature since it indicated further reviews would take place at various points in the future. However, after the November hearing the Trial Court stated in its order that its decision was a "final determination" and the custody decision would not be reviewed in the future "absent a request by either party and a showing of a substantial material change in circumstances."

Mother appeals, claiming the Trial Court erred when it changed custody by designating Father as the primary residential parent absent a finding that there had been a material change in circumstances and that the change in custody was in the best interests of the children.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address the Trial Court's implicit conclusion that there was a material change in circumstances which would warrant a change in custody to Father. In *Kendrick v. Shoemake*, 90 S.W.3d 566 (Tenn. 2002), our Supreme Court set forth the appropriate standard to be applied when making such a custody determination. Specifically, the Court stated:

The principal issue in this case concerns the proper standard to be applied to a petition to modify custody from one parent to the other parent. This issue is largely resolved by our recent decision in *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002). *Blair* involved a custody dispute between a parent and a non-parent. We concluded that once a valid order of custody has been issued, subsequent custody modification proceedings should apply the "standard typically applied in parent-vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." *Id.* at 148. As explained in *Blair*, the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. *Id.* at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." *Id.* (citations omitted). We note that a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being.

*Kendrick*, 90 S.W.3d at 570 (footnotes omitted). If a material change in circumstances has been found, then a trial court next must determine whether custody modification is in the child's best interests utilizing the factors set forth in Tenn. Code Ann. § 36-6-106. *Id.*

In the present case, Father's claim that there had been a material change in circumstances centered around the older child's allegation of physical abuse by Mother and the step-father. These allegations, however, later were recanted. While Father indicated in his Petition to Change Custody that the allegations were being investigated by the Department of Children's Services, there is nothing in the record to indicate that the Department found anything to substantiate the allegations, assuming Father is correct that such an investigation was undertaken. Other than mere allegations and denials contained in pleadings, the only proof in the record regarding whether there was any physical abuse is Hurd's testimony where he denied engaging in any abusive behavior, and Dr. Kutty's report which states "it does not appear that [the child] has been subjected to abuse of any kind." Based on the record before this Court, we conclude that the allegations of physical abuse simply were unfounded. While the existence of physical abuse unquestionably could, and likely would, constitute a material change in circumstances for purposes of changing custody, altogether unfounded allegations most certainly cannot.

The only other factor which Father claims supports a change in custody is the preference of one or both of the children to live with Father. Since we do not have the *in camera* testimony of the children, we cannot assume that the children actually expressed a preference for living with Father. But even if we could, a child's stated preference to live with one parent over the other, standing alone, cannot constitute a material change in circumstances as a matter of law. *If* there has been a showing of a material change in circumstances, then the stated preference of a child is one of the statutory factors which can be considered by a trial court when determining what is in the best interest of the child. Tenn. Code Ann. § 36-6-106 sets forth various factors for a trial court to consider when determining what is in the best interest of a child, including the "reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children." Tenn. Code Ann. § 36-6-106(a)(7). However, in cases involving a change in custody as opposed to an initial custody determination, a trial court does not reach the best interest analysis until and unless there is first a finding that there has been a material change in circumstances. *Kendrick, supra*. That is not to say that the reasons underlying a child's stated preference cannot affect the decision on whether there has been a material change of circumstances. By way of example only, if a child desires to live with one parent because the other parent is habitually intoxicated and abusive, then the underlying facts surrounding *why* the child has expressed such a preference clearly are relevant. Returning to the present case, the reasons why the children want to live with Father, if they do, are not contained in the record. We cannot and will not assume that these unknown reasons are legally sufficient to constitute a material change in circumstances. Absent a material change in circumstances, we do not reach the statutory factors to be used in making the best interest analysis, including the stated preference of the children.

We have thoroughly reviewed the record in this case and conclude that the Trial Court erred when it implicitly held that there was a material change in circumstances affecting the well being of these children. The Judgment of the Trial Court designating Father as the primary residential parent is reversed. On remand, the Trial Court is instructed to determine and facilitate an expeditious transfer of custody back to Mother in such a way as to minimize the impact on the children. The Trial Court further is instructed to establish appropriate visitation rights for Father as well as Father's child support obligation. The one thing that is perfectly clear to this Court is that the complete inability of her parents to get along has had a significant negative impact on their older daughter. Unfortunately, neither the Trial Court nor this Court has the power to order these parents to grow up. Nevertheless, we strongly encourage the Trial Court on remand to be as detailed as possible when addressing how the parties are to act toward each other when their children are present and on matters involving the care and well being of these two innocent girls who unnecessarily have been caught in the middle of their parents' battles.

## Conclusion

The Judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion. Costs on appeal are assessed against the Appellee Bradley Warren Mulkey.

_____
D. MICHAEL SWINEY, JUDGE