# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 5, 2001 Session

## RICHARD THOMAS BOGAN  v.  DORIS MAE BOGAN

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Sullivan County**
**No. 21988(T)     Hon. John S. McLellan, III, Chancellor**

---

**No. E1998-00060-SC-R11-CV - Filed November 8, 2001**

---

The sole question in this appeal is whether an obligor's retirement constitutes a substantial and material change in circumstances so as to permit modification of a spousal support obligation. The trial court held that the obligor's retirement did constitute a substantial and material change in circumstances, but the Court of Appeals reversed, finding that because the retirement was voluntary and foreseeable, the obligor could not seek modification of the original alimony award. We granted permission to appeal and hold that a bona fide retirement need only be objectively reasonable under the totality of the circumstances to constitute a substantial and material change in circumstances. In so holding, we reject, in the retirement context, the traditional test requiring an involuntary and unforeseeable change in circumstances to modify a support award. We further hold that the retirement in this case was objectively reasonable and that the trial court did not abuse its discretion in modifying the support award. We reverse the judgment of the Court of Appeals and reinstate the trial court's modification of the support award.

### Tenn. R. App. P. 11 Application for Permission to Appeal;
### Judgment of the Court of Appeals Reversed

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, J., joined. ADOLPHO A. BIRCH, JR., J., filed a concurring and dissenting opinion. JANICE M. HOLDER, J., filed a dissenting opinion.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Richard Thomas Bogan.

William Stephenson Todd, Jr., Kingsport, Tennessee, for the appellee, Doris Mae Bogan.

## OPINION

# FACTUAL BACKGROUND

On July 11, 1991, the Sullivan County Chancery Court granted the parties in this case a divorce after nearly thirty years of marriage. The final decree dissolving the marriage was entered on July 24, 1991, and the decree incorporated a Marital Dissolution Agreement (MDA) signed by the parties. According to the MDA, the parties agreed to an equitable division of all of the marital property,[1] and Mr. Bogan further agreed to pay Ms. Bogan monthly support payments in the amount of $2,300.00, which were to cease upon her remarriage or upon the death of either party. The MDA made no specific reference to modification of Mr. Bogan's support payments in the event of his retirement.

On August 25, 1997, Mr. Bogan filed a petition to terminate his support obligation alleging two substantial and material changes in circumstances: (1) that he would obtain retirement status on September 1, 1997, with his employer, Eastman Chemical, and that as a result, he would no longer receive a wage from his employer; and (2) that because of his retirement, Ms. Bogan would no longer need support payments, as she would receive half of his retirement income pursuant to the MDA and the Qualified Domestic Relations Order. Ms. Bogan answered that because the retirement was voluntary and foreseeable at the time of the MDA, no legally cognizable change in circumstances had occurred warranting modification or termination of the support payments.

After holding hearings on the petition on February 19 and April 12, 1998, the chancery court found that Mr. Bogan's retirement was a substantial and material change in circumstances that warranted a reduction in his support payments. More specifically, the court found the following facts: (1) that Mr. Bogan's retirement was motivated by his own dissatisfaction with his job and by Eastman Chemical's attempt to downsize its workforce by encouraging employees to retire[2]; (2) that Mr. Bogan was qualified for full retirement under Eastman Chemical's then current point system,

---

[1] Most importantly for purposes of this case, the parties agreed to an equal division of the value of Mr. Bogan's retirement plan as it stood on the date of the decree. This provision was implemented by a Qualified Domestic Relations Order (QDRO) entered on September 4, 1991. The QDRO named Ms. Bogan as an alternate payee on the Kodak Retirement Income Plan, and it provided that upon Mr. Bogan's retirement and his reaching pay status, Ms. Bogan would receive 50% of the gross amount of the monthly retirement benefit as calculated on July 11, 1991.

[2] Concerning the growing dissatisfaction with his job, Mr. Bogan testified that at the time of the divorce, he was employed as the head of Development and was a Senior Research Chemist supervising over 40 employees. In 1993, he was "laterally" moved to the position of "Group Leader" supervising twelve employees, and in 1996, he was again moved to the position of "Individual Contributor" supervising one technician. Mr. Bogan testified that although all of these moves were lateral moves in the sense that his pay was not decreased, he felt as though these moves were demotions "in status and standing," given the decreasing level of responsibility associated with each transition.

With respect to Eastman Chemical's attempt to encourage employees to retire, the evidence shows that Eastman Chemical planned to reduce its overall production costs through a program called Advantage Cost 2000, a part of which was the modification of employee benefits. The evidence further suggests that Eastman Chemical particularly desired a reduction in its workforce in order to cut costs, and the Employee Benefits Director of Eastman Chemical testified that over 2200 other employees retired during the two-year period preceding January 1, 1998, when the change in employee benefits was to occur. Although this witness also denied that Eastman Chemical specifically encouraged employees to retire, this level of retirement was the highest for any other two-year period in the company's history.

having nearly five more points than was needed for retirement with full benefits[3]; (3) that if Mr. Bogan retired after January 1, 1998, his lump-sum retirement benefits would decrease in value, to be replaced by monthly annuity payments, and that he would lose value in his joint survivor and life insurance benefits; (4) that Mr. Bogan's income after his retirement was fifty percent of his income at the time of the divorce; (5) that Ms. Bogan's need for support had decreased because she could earn substantial annual investment income between $14,736.00 and $16,306.00 from the lump sum payment of Mr. Bogan's retirement benefits; and (6) that since the parties' divorce in 1991, Ms. Bogan's opportunity to gain addition income had increased because her business had improved its earning potential.

The chancery court also found that the parties did not address the effect of Mr. Bogan's retirement in the MDA and that they did not foresee the change in retirement benefits that would occur on January 1, 1998, which eliminated the lump sum payments and reduced the value of the benefits from the retirees' life insurance and survivor income plans. Nevertheless, the court concluded that because Ms. Bogan still had financial need and because Mr. Bogan retained some ability to provide support, his request to terminate his obligation should be denied. Instead, based upon its factual findings, the chancery court concluded that a reduction in support payments was more appropriate, and it reduced Mr. Bogan's monthly support obligation from $2,300.00 to $945.00.

Ms. Bogan appealed to the Court of Appeals, arguing that because her former husband's retirement was voluntary and foreseeable, and because his retirement was contemplated in the MDA, no material change in circumstances had occurred warranting a modification of the support benefits. A majority of the Court of Appeals agreed, and it reinstated the original award of $2,300.00. Although the majority concluded that retirement may not always be a foreseeable event, it found that Mr. Bogan's voluntary retirement was in fact foreseeable at the time of the MDA, and consequently, no material change in circumstances had occurred. However, writing in dissent, Judge Susano expressed his belief that retirement is usually always voluntary and foreseeable and that these two factors should not preclude a finding of a substantial and material change in circumstances. Instead, Judge Susano believed that retirement should be considered a substantial and material change in circumstances so long as it is taken in good faith and without intent to defeat the support obligations.

Mr. Bogan then requested permission to appeal to this Court, primarily on the issue of whether a good-faith retirement, though voluntary and foreseeable, may constitute a substantial and material change in circumstances warranting a reduction in spousal support obligations. This Court initially heard oral argument in this case during our September 2000 session in Knoxville, and the panel hearing this case consisted of then Chief Justice Anderson, Justice Birch, Justice Holder, and Justice Barker. Following oral argument, and upon further consideration of the record in this case,

---

[3] In September 1990, Eastman Chemical created a new retirement scheme offering full retirement benefits to employees who obtained 85 points based upon the sum of the employee's age and years of service. At the time of his retirement, Mr. Bogan was about three weeks short of his sixtieth birthday, and he had accumulated nearly 90 points in the retirement plan.

we requested reargument before the full panel of this Court at our September 2001 session in Knoxville. We now hold that an objectively reasonable retirement, taken in good faith and without intent to defeat the support obligation, does constitute a substantial and material change in circumstances so that a modification of support obligations may be considered. We also hold, however, that actual modification of the award, if any, is addressed to the trial court's discretion after considering the relevant factors listed in Tennessee Code Annotated section 36-5-101(d). The judgment of the Court of Appeals is reversed.

## STANDARD OF APPELLATE REVIEW

Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," Cranford v. Cranford, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, see Sannella v. Sannella, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." Watters v. Watters, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." Kinard v. Kinard, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); see also Goodman v. Goodman, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion."). When the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them. See, e.g., Crabtree v. Crabtree, 16 S.W.3d 356, 360 (Tenn. 2000); see also Tenn. R. App. P. 13(d).

## MODIFICATION OF SUPPORT AWARD BASED UPON
## AN OBLIGOR'S RETIREMENT

It is well settled that a court may not modify or terminate a spousal support award unless it first finds that a substantial and material change in circumstances has occurred since the entry of the original support decree. See Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2000). In the typical case involving modification of spousal support awards, a change in circumstances is considered to be "material" when the change (1) "occurred since the entry of the divorce decree ordering the payment of alimony," Watters, 22 S.W.3d at 821, and (2) was not "anticipated or [within] the contemplation of the parties at the time they entered into the property settlement agreement," id.; see also McCarty v. McCarty, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); Elliot v. Elliot, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). Moreover, a change in circumstances is considered to be "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support. See Bowman v. Bowman, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

This Court has not previously addressed whether an obligor's voluntary retirement can constitute a substantial and material change in circumstances. The general rule in this state with

regard to modification of support awards has long been that "obligations voluntarily assumed are not proper to be considered as changed circumstance[s] to reduce support payments otherwise owed," Dillow v. Dillow, 575 S.W.2d 289, 291 (Tenn. Ct. App. 1978), and the Court of Appeals has applied this rule in various contexts to deny modification of a support award when an obligor voluntarily acted in a way that reduced his or her income available for spousal support, see, e.g., Watters, 22 S.W.3d at 823; Elliot, 825 S.W.2d at 91-92; Jones v. Jones, 784 S.W.2d 349, 353 (Tenn. Ct. App. 1989). Indeed, the intermediate court has applied this general rule to deny modification of a support award following an obligor's retirement when it found that the retirement was voluntary and foreseeable. See Sannella v. Sannella, 993 S.W.2d 73 (Tenn. Ct. App. 1999).[4] At least four other jurisdictions have also denied modification of support obligations when the retirement was voluntary or foreseeable. See Wheeler v. Wheeler, 548 N.E.2d 27 (N.D. 1996); Leslie v. Leslie, 827 S.W.2d 180, 183 (Mo. 1992); Ellis v. Ellis, 262 N.W.2d 265, 268 (Iowa 1978); Shaughnessy v. Shaughnessy, 793 P.2d 1116, 1118 (Ariz. Ct. App. 1990).

However, when an obligor seeks bona fide retirement, as opposed to mere willful underemployment, application of our traditional rules concerning modification of support agreements leaves much to be desired. Absent some tragedy or combination of unfortunate circumstances, retirement from further employment in the workforce is always voluntary and foreseeable because, at some point, every worker will eventually retire. Moreover, taken to its logical extreme, this standard would force an obligor to work until physically incapable of doing so merely to avoid the allegation that he or she was "voluntarily" avoiding spousal obligations. While the traditional standards regulating modification of support agreements should usually be applied to motivate parties to provide for such contingencies in their dissolution agreement, strict application of these standards in the retirement context can work unreasonable hardships. Cf. Sifers v. Sifers, 544 S.W.2d 269, 269-70 (Mo. Ct. App. 1976) (denying modification when obligor "voluntarily" retired, even though he was 62, had a malignant kidney removed, and was unable to find employment in the industry in which he had worked all his life). At some point, parties must recognize that "[j]ust as a married couple may expect a reduction in income due to retirement, a divorced spouse cannot expect to receive the same high level of support after the supporting spouse retires." In re Marriage of Reynolds, 74 Cal. Rptr. 2d 636, 640 (Cal. Ct. App. 1998).

Accordingly, we hold that when an obligor's retirement is objectively reasonable, it does constitute a substantial and material change in circumstances—irrespective of whether the retirement was foreseeable or voluntary—so as to permit modification of the support obligation.[5] However,

---

[4] See also Kennedy v. Kennedy, No. M1997-00219-COA-R3-CV, 2000 WL 1753074 (Tenn. Ct. App. filed at Nashville, Nov. 30, 2000); Horn v. Horn, No. 02A01-9401-CH-00011, 1995 WL 290475 (Tenn. Ct. App. filed at Jackson, May 15, 1995).

[5] Nothing we have said would prevent parties from deciding for themselves the effect of a bona fide retirement on spousal support payments. Indeed, because voluntary retirement is usually always foreseeable in some sense, parties are especially encouraged to make arrangements for this occasion in the marriage dissolution agreement. Moreover, although not critical to our analysis, we note that a majority of jurisdictions addressing this issue also only require a

(continued...)

while bona fide retirement after a lifetime spent in the labor force is somewhat of an entitlement, an obligor cannot merely utter the word "retirement" and expect an automatic finding of a substantial and material change in circumstances. Rather, the trial court should examine the totality of the circumstances surrounding the retirement to ensure that it is objectively reasonable. The burden of establishing that the retirement is objectively reasonable is on the party seeking modification of the award, cf. Seal v. Seal, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990), and the trial court's determination of reasonableness will not be reversed on appeal absent an abuse of discretion, see, e.g., Crabtree, 16 S.W.3d at 360. Although we decline to confine this inquiry to consideration of a list of factors, in no case may a retirement be deemed objectively reasonable if it was primarily motivated by a desire to defeat the support award or to reduce the alimony paid to the former spouse.[6]

However, even when an obligor is able to establish that a retirement is objectively reasonable, and therefore that it constitutes a substantial and material change in circumstances, the obligor is not necessarily entitled to an automatic reduction or termination of his or her support obligations. As evidenced by its permissive language, the statute permitting modification of support awards contemplates that a trial court has no duty to reduce or terminate an award merely because it finds a substantial and material change in circumstances. See Tenn. Code Ann. § 36-5-101(d)(2). Instead, the change in conditions resulting from retirement merely allows the obligor to demonstrate that reduction or termination of the award is appropriate. Cf. McFadden, 563 A.2d at 184; Silvan, 632 A.2d at 530. Accordingly, when assessing the appropriate amount of modification, if any, in the obligor's support payments, the trial court should consider the factors contained in Tennessee Code

---

[5] (...continued)

reasonable, good faith retirement. See, e.g., Misinonile v. Misinonile, 645 A.2d 1024, 1027 (Conn. Ct. App. 1994); Silvan v. Sylvan, 632 A.2d 528 (N.J. Super. Ct. App. Div. 1993); Pimm v. Pimm, 601 So. 2d 534, 537 (Fla. 1992); McFadden v. McFadden, 563 A.2d 180, 183 (Pa. Super. Ct. 1989); Smith v. Smith, 419 A.2d 1035, 1038 (Me. 1980).

[6] While the primary purpose of the retirement cannot be to defeat the support obligation, we cannot further require that an obligor be ignorant of the effects of his or her retirement upon the receiving spouse. See Smith, 419 A.2d at 1038. In most cases, if not all, the obligor will undoubtedly be aware that retirement will affect the income available to pay his or her support obligations, but mere knowledge of this fact alone will generally be insufficient to find that the retirement was taken primarily as an effort to avoid support obligations.

Furthermore, the dissent has taken the approach of several states and has adopted a list of nine factors to determine whether a retirement constitutes a substantial and material change in circumstances. Cf. Pimm, 601 So. 2d at 537; Silvan, 632 A.2d at 530; In re Marriage of Colombo, 555 N.E.2d 56, 57 (Ill. App. Ct. 1990). We decline to follow suit, because many of these factors seem designed only to lead to the conclusion that the retirement was voluntary. For example, the lack of advanced age or the good health of the obligor essentially proves nothing more than that the obligor chose to retire free from any physical compulsion to do so. As we do not consider the voluntariness of the retirement as a factor, many of these factors may be relevant only to the extent that they tend to show that the retirement was taken in bad faith to defeat the support obligation.

The dissent also opines that we have given no guidance to the trial courts to determine when a retirement may be deemed objectively reasonable. To the contrary, we believe that the objectively reasonable standard provides sufficient guidance to the trial courts, which are experienced in handling questions of reasonableness on a daily basis. The absence of a long list of factors is simply a recognition that trial judges are fully capable, on their own, of analyzing the reasonableness of a retirement decision from the totality of the circumstances.

Annotated section 36-5-101(d)(1) to the extent that they may be relevant to the inquiry. See, e.g., Watters, 22 S.W.3d at 821; Seal, 802 S.W.2d at 620; Threadgill v. Threadgill, 740 S.W.2d 419, 422-23 (Tenn. Ct. App. 1987).

Although section 36-5-101(d) lists several factors for consideration, the two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support. See, e.g., Givler v. Givler, 964 S.W.2d 902, 906 (Tenn. Ct. App. 1997). We must disagree, however, with the conclusion articulated by the Court of Appeals on several occasions that the need of the receiving spouse is "the most important factor" to consider when deciding whether to modify a support award. See, e.g., Sannella, 993 S.W.2d at 76; Cranford, 772 S.W.2d at 50. When addressing an *initial* award of support, the need of the spouse must necessarily be the most important factor to consider, because alimony is primarily intended to provide some minimal level of financial support for a needy spouse. See Lancaster v. Lancaster, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984). Nevertheless, when deciding whether to *modify* a support award, the need of the receiving spouse cannot be the single-most dominant factor, as a substantial and material change in circumstances demands respect for other considerations. While the need of the receiving spouse remains an important consideration in modification cases, the ability of the obligor to provide support must be given at least equal consideration. Accordingly, to the extent that any case would compel giving more weight to the need of the receiving spouse than all other factors in order *to modify* a support obligation, it is overruled.

Turning to the facts of this case, we agree with the trial court that the parties did not contemplate the effect of Mr. Bogan's retirement on his support payments. Where parties contract as to rights and obligations in a marriage dissolution agreement, and that agreement is incorporated into the judgment of divorce, courts should construe the MDA like "other contracts [with respect to] its interpretation, its meaning and effect." Gray v. Estate of Gray, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998). As such, where the MDA itself provides for resolution of this issue, courts should defer to the provisions of the MDA, unless it would be unconscionable to do so. See Towner v. Towner, 858 S.W.2d 888, 892 (Tenn. 1993).

The MDA in this case, however, contains no express provision dealing with modification of support upon Mr. Bogan's retirement. Moreover, reviewing the MDA as a whole, there is no indication that the parties even contemplated this issue. While Ms. Bogan asserts that the division of the retirement benefits shows that the parties contemplated the fact of Mr. Bogan's retirement, we disagree that this division of marital property shows that the parties specifically contemplated the effect of Mr. Bogan's retirement on his support payments. Consequently, because the parties did not contemplate the effect of retirement on the spousal support payments, the trial court retains the ability to alter or modify the support payments upon a finding of a substantial and material change in circumstances. Accord Pimm, 601 So. 2d at 537.

The first question to be resolved, therefore, is whether Mr. Bogan's retirement was objectively reasonable under the totality of the circumstances so as to constitute a substantial and material change in circumstances. We conclude that his retirement was in fact objectively

reasonable. First, there is no evidence in the record that Mr. Bogan's retirement from Eastman Chemical was primarily designed or motivated to escape his spousal support obligation. Instead, as the trial court found, his retirement was due to Eastman Chemical's attempt to downsize its workforce by encouraging employees to retire, as well as his own dissatisfaction with his job. The fact that more than 2200 other Eastman employees retired during this general period, exceeding any other level of retirement during a similar period in the company's history, must weigh in favor of finding the retirement reasonable.[7] Moreover, at the time of his retirement, Mr. Bogan had been eligible to retire with full benefits for some time prior, indicating that he did not retire as soon as possible to diminish his available income.

Arguing against finding a legally material change in circumstances, Ms. Bogan takes substantial issue with her former husband's age at his retirement, which was less than three weeks before his sixtieth birthday. Several states have held that age sixty-five is the presumptively reasonable age for retirement, and one state in particular has held because of "the widespread acceptance of sixty-five as the normal retirement age," an obligor that retires before that time bears "a significant burden to show that a voluntary retirement . . . is reasonable." Pimm, 601 So. 2d at 537. Although an obligor's retirement age may be considered in assessing the overall reasonableness of the retirement, we are reluctant to establish a presumptive age for an objectively reasonable retirement. All things being equal, an obligor who retires at an exceptionally young age will necessarily run a greater risk of being unable to establish that the retirement is objectively reasonable so as to demonstrate a substantial and material change in circumstances. However, Mr. Bogan's retirement age, while less than many but more than some, is not necessarily so young as to be unreasonable, especially given the particulars of his retirement. Accordingly, based on the totality of the circumstances as supported by the preponderance of the evidence, we conclude that Mr. Bogan's retirement was objectively reasonable so as to constitute a substantial and material change in circumstances.

Having found a substantial and material change in circumstances, the next inquiry is what modification, if any, should be made to the support award. As stated earlier, courts should consider, where relevant to modification, many of the same factors in section 36-5-101(d) that were used to grant the original support award. Considering the financial need of the receiving spouse first, the trial court found, and we agree, that Ms. Bogan still possesses financial need for the support award. The record indicates that her monthly expenses, while having increased by only $192.00 since the divorce in 1991, still amount to about $3,580.00, and this amount exceeds her average monthly income from earnings ($735.00) and support ($2,300.00) by more than $500.00. To supplement her earnings income, the trial court found that Ms. Bogan could invest the lump sum payment received from Mr. Bogan's retirement plan and earn an extra $14,763.00 per year, assuming a ten-percent rate

---

[7] Ms. Bogan argues that Eastman Chemical had not actually instituted mandatory retirements or reductions in its workforce, and as such, any compulsion that Mr. Bogan felt to leave cannot be used to find a substantial and material change in circumstances. While she correctly asserts that Eastman Chemical did not force its employees to retire, the record contains substantial evidence that the reduction in benefits was designed, at least in part, to cut Eastman's labor costs. As such, the weight of the evidence is not against the trial court's finding that Mr. Bogan felt as though he was being pressured by Eastman Chemical to retire.

of return and no invasion of the investment principal.[8]  Therefore, based on all of these calculations, while Ms. Bogan could expect an average monthly income without additional support of about $1,965.25, including average earnings of $735.00 and investment income of $1,230.25, this amount is still about $1,614.75 short of that needed for current monthly expenses.

With respect to Mr. Bogan's ability to provide support, the record shows that his retirement investments provide the only source of his monthly income.  These investments yield a net monthly income of $3,150.00, which is less than half of the income ($6,900.00) upon which the support award was originally based.  Including his monthly support obligation to Ms. Bogan of $2,300.00, his average monthly expenses are $5,167.51, and this amount exceeds his own monthly retirement income by $2,017.51.  Consequently, while both lower courts found that Mr. Bogan retains some ability to provide spousal support, his ability to pay has been significantly diminished by his substantial and material change in circumstances.[9]

Considering the opportunities for other income as an additional factor, the trial court found that Ms. Bogan has the opportunity to increase her earning capacity from her business given that she now possesses sole ownership of the enterprise and its assets.  It is true that Ms. Bogan has increased her monthly income from her business since the divorce by about $150, but there is no indication in the record that this income will continue to increase.  While the court also noted that Ms. Bogan's anticipated income from this business should increase given its increased earnings potential since the divorce, no evidence exists in the record that actually supports this finding.  To the contrary, Ms. Bogan's accountant testified that he counseled her to close the business, which has made a yearly profit only once since 1993.  Consequently, any anticipated increase in Ms. Bogan's earning capacity from her business appears to be merely speculative, and we therefore find that it was improperly considered.

With respect to the other factors listed in section 36-5-101(d), none directly apply to the modification of the award in this case.  Therefore, considering the relevant factors, we are unable to conclude that the trial court abused its discretion by reducing Mr. Bogan's monthly support

---

[8] At the hearing, Mr. Bogan's financial expert testified that Ms. Bogan could invest the lump sum payment from his retirement plan and expect to earn between $14,763.00 and $16,306.00, assuming a ten-percent return and no invasion of the investment principal.  Ms. Bogan's financial expert testified that the rate of return should instead be calculated at eight percent.  Under this calculation, her expert believed that her assets would be depleted by her seventieth birthday if the support payments were completely terminated.  However, the trial court credited Mr. Bogan's expert over that of his former wife, and because no clear and convincing evidence exists to show that the court improperly credited this witness, see Wells v. Tennessee Bd. of Regents, 9 S.W.3d 779, 783 (Tenn. 1999), we accept this finding as the measure of Ms. Bogan's reasonable investment expectations.

[9] Admittedly, we find curious the finding that Mr. Bogan still has a significant ability to pay support, especially given that his monthly income exceeds his expenses by less than $300 if no support is paid to Ms. Bogan.  This finding is even more curious given that his monthly expense estimate was calculated by the trial court based on the assumption that his current wife would pay for half of several household expenses.  It appears that the trial court believed that Mr. Bogan could take steps to reduce his monthly expenses, though we note that the court did not expressly make such a finding.

obligation from $2,300.00 to $945.00. While it is true that Ms. Bogan still has financial need, it is also true that Mr. Bogan's ability to provide that support has been significantly reduced. In fact, it appears that Mr. Bogan, while able to provide some level of support, cannot continue to pay support at pre-retirement levels without running a substantial monthly deficit. Moreover, the proportion of Mr. Bogan's income devoted to spousal support after the modification is still roughly the same as it was before the modification. A trial court acts within its discretion when it applies the correct legal standard and reaches a decision that is not clearly unreasonable. See State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999); Overstreet v. Shoney's, Inc., 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). On the facts of this case, we cannot say that the decision of the trial court to modify the support award was contrary to law or was otherwise clearly unreasonable.

The dissent in this case expresses much concern that we have "impoverished" Ms. Bogan by affirming the reduction of her support payments. The dissent also maintains that Ms. Bogan "is unable to support herself without the original award of alimony in futuro." Upon our review of the record, however, we find little factual basis for such a view. We would note the important, if not overlooked, fact that Ms. Bogan has received a substantial sum from Mr. Bogan's retirement plan, an additional amount that she was not entitled to receive before his retirement. Combining this investment income with the alimony payments that she will continue to receive, the trial court found that Ms. Bogan's monthly income will be almost exactly what it was before her former husband's retirement. Therefore, we are unable to see how our decision today works to impoverish Ms. Bogan.

As we remarked earlier, retirement is a unique circumstance in support modification cases. Notwithstanding the views of the dissent to the contrary, retirement is simply not like other forms of voluntary underemployment. Because retirement is somewhat of an entitlement, the foreseeability or voluntariness of the retirement decision does not affect the support modification analysis, and the weight given to various considerations is not precisely the same as that given under different circumstances. So long as the retirement is objectively reasonable and taken in good faith, we will not look to the potential income of the retired obligor, and we will give the reduced ability of the retired obligor to pay support at least equal consideration with the need of the receiving spouse. Based on the facts of this case, we cannot hold that the trial court abused its discretion in modifying Mr. Bogan's support award. Therefore, we reverse the judgment of the Court of Appeals and reinstate the award as modified by the Sullivan County Chancery Court.

### CONCLUSION

In summary, we hold that the bona fide retirement of an obligor constitutes a substantial and material change in circumstances so as to permit modification of a spousal support award when the decision to retire is objectively reasonable considering the totality of the circumstances. However, a mere finding of such a change in circumstances does not require modification of the support award, and the trial court should carefully consider the relevant factors of Tennessee Code Annotated section 36-5-101(d) in deciding by what amount, if any, the award should be modified. On the facts of this case, though, we hold that the trial court did not abuse its discretion in reducing the amount of the former husband's support obligation following his objectively reasonable retirement.

Costs of this appeal are assessed to the appellee, Ms. Doris Mae Bogan.


_____

WILLIAM M. BARKER, JUSTICE