IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2010 Session

# TIMOTHY WADE KEYT v. NANCI SUZANNE KEYT

**Appeal from the Chancery Court for Putnam County**
**No. 02-174     Ronald Thurman, Chancellor**

_____

**No. M2008-01609-COA-R3-CV - Filed May 14, 2010**

_____

This is the second appeal in a divorce action. Husband appeals the division of marital property and the award of alimony *in solido* to Wife. In the 2005 Final Decree of Divorce, the trial court determined that the husband's shares of stock in the family business, which his parents gifted to him, were his separate property; however, the appreciation of that stock during the marriage, $1.7 million, was held to be marital property. The court awarded the wife 37.5 percent of the marital estate and alimony *in futuro* of $1,500 per month for the first year and $2,500 per month thereafter. This court affirmed the division of marital property but modified the award of alimony, holding that she was entitled to eight years of rehabilitative alimony but not alimony *in futuro*. The Supreme Court held that the appreciation of the husband's stock was his separate property, not marital property, and remanded the case to the trial court to reconsider the division of the marital estate and to reconsider the award of alimony due to the substantial reduction of the marital estate. On remand, the trial court awarded the wife 64 percent of the substantially reduced marital estate and granted her alimony *in solido* in the amount of $478,000. In this second appeal by the husband, we affirm the division of marital property, finding it is not inequitable under the circumstances, and we affirm the award of alimony *in solido* to Wife, finding that the award was based on the relevant factors in Tenn. Code Ann. § 36-5-121(i).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Michael W. Binkley, Franklin, Tennessee, for the appellant, Timothy Wade Keyt.

William F. Roberson, Jr., Cookeville, Tennessee, for the appellee, Nanci Suzanne Keyt.

**OPINION**

Husband, Timothy Wade Keyt, and Wife, Nanci Suzanne Keyt, were married in 1988. In May 2002, Husband filed for divorce citing irreconcilable differences and inappropriate marital conduct. Wife filed an answer and counter-complaint alleging irreconcilable differences and inappropriate marital conduct by Husband, and she asserted claims for alimony and an equitable division of the marital estate.

In the first trial of this case, which was held in 2004, Husband's interest in Service Transport, Inc., a family business founded by his father, was a principal issue. Husband owned 14.24 percent of the company, which he acquired as his parents made annual gifts of shares to him.[1] The company had an estimated value of $18 million and Husband's share was estimated to be $2,563,200.

It was undisputed that Husband maintained the stock as his separate property throughout the marriage; nevertheless, Wife claimed the appreciation in the value of the stock during their seventeen-year marriage constituted marital property because Husband worked for the family business since he was 23 years old and his efforts increased the value of the business. The trial court agreed with Wife and classified as marital property the amount the stock appreciated in value during the marriage. The trial court further found that Husband's 14.24 percent interest in Service Transport, valued at $2,563,200, had appreciated by $1,740,904 during the marriage as a consequence of Husband's efforts. Accordingly, the trial court included that amount as part of the marital estate and with the inclusion of the appreciation in value of Husband's interest in Service Transport, the marital estate was valued at $2,221,820.[2]

In its Final Decree of Divorce on January 24, 2005, the trial court granted Wife the divorce on the ground of Husband's inappropriate marital conduct. In the division of marital property, Wife was awarded 37.5 percent of the marital estate. She received the marital

---

[1]Husband's parents implemented an estate plan in 1984 pursuant to which annual gifts were made to Husband at the maximum level of the annual gift tax exemption. The gifts, which were in the form of cash or Service Transport stock, were made all but two years from 1984 to 2001. The gifts were valued at $20,000 per year.

[2]The sales contract established that Husband was entitled to $2,563,200 as his share of the gross proceeds; however, a certified public accountant explained that Husband's net proceeds were only $1,283,367.65 as a consequence of deductions for indemnities the sellers owed the buyer. Husband also retained a 14.24% interest in real estate reserved from the sale of stock; Husband's share of the real estate retained was valued at $709,904. The methodology used to calculate these figures is explained by the Supreme Court in its opinion. *See Keyt v. Keyt*, 244 S.W.3d 321, 326 (Tenn. 2007).

residence, a separate residence in which Wife's mother resided, Husband's 401(k) plan, and a cash award of $520,000 as her share of the appreciation of the stock. Husband received a houseboat, tracker, motorcycle, and the BKM Truck Terminal. Husband also retained other substantial assets that were classified as his separate property. The trial court also awarded Wife alimony *in futuro* of $1,500 per month for one year and $2,500 per month thereafter.

In the first appeal, this court affirmed the division of the marital estate, but reversed and modified the award of alimony, changing it from *in futuro* to eight years of rehabilitative alimony. The Tennessee Supreme Court, in its opinion filed on December 19, 2007, reversed the division of the marital estate, holding that Husband did not substantially contribute to the appreciation of the stock in Service Transport and, therefore, the appreciation was not an asset of the marital estate. *See Keyt v. Keyt*, 244 S.W.3d 321 (Tenn. 2007). Accordingly, the Supreme Court remanded the case to the trial court for reconsideration of the division of marital property. The Supreme Court also directed the trial court to reconsider the award of alimony due to the substantial change in the division of the marital estate.

In the interim, after this court filed its opinion in the first appeal, but before the Supreme Court filed its opinion, Husband paid Wife $478,000 as the balance of her share of the marital estate. Following the release of the Supreme Court's decision, Husband sought an injunction to preserve the money Husband had previously paid to Wife as part of the previous division of marital property. As Wife had used a substantial portion of the assets to pay off the mortgages on the real property awarded to her, the trial court enjoined Wife from encumbering her real property. Thereafter, the trial court took up the issues as directed by the Supreme Court, the division of the marital estate and alimony.

On June 17, 2008, the trial court conducted a hearing concerning the two issues remanded by the Supreme Court and limited the proof to that which had been presented in the August 2004 trial.[1] That proof established that during the marriage Wife did not work outside the home, she was the primary caregiver to the parties' child, she had a high school education, she had worked in sales for six years prior to the marriage, and that Wife had no separate assets of any real value. The proof also established that Husband had attended three years of college, he worked for Service Transport his entire adult life in various capacities, his monthly income at the time of the divorce was $13,370, he received net cash proceeds of $1,283,368 from the sale of his 14.24 percent interest in Service Transport in 2002, and he retained real estate of which his proportionate interest was valued at $709,904.

---

[1]This case was presided over by Chancellor Vernon Neal at all times prior to September 1, 2006, when Chancellor Neal retired. He was succeeded in office by Chancellor Ronald Thurman, who has presided over this matter ever since, including the reconsideration of the issues on remand in 2008. The Final Order After Remand from which this appeal arises was issued by Chancellor Thurman.

The trial court issued its Final Order After Remand on June 27, 2008. As directed by the Supreme Court, the trial court excluded the appreciation of Husband's stock in Service Transport from the marital estate. The trial court then examined the marital estate and decided to reaffirm the division of marital property as stated in the 2005 divorce decree – less the $520,000, the amount awarded to Wife from the stock appreciation, which had been ruled as Husband's separate property. As a result, Wife received 64 percent of the marital estate and Husband received 36 percent of the marital estate. The court specifically found that the division was equitable under the relevant factors in Tenn. Code Ann. § 36-4-121(c). The court then reevaluated the award of alimony to Wife by applying the relevant factors in Tenn. Code Ann. § 36-5-121(i) and the public policy as stated in Tenn. Code Ann. § 36-5-121(c). After making numerous and specific findings of facts, which are discussed in our analysis that follows, the trial court awarded Wife $478,000 as alimony *in solido*. The trial court denied Wife's request for attorneys' fees finding that the award of alimony *in solido* and marital property offset her need to be reimbursed for her attorney's fees and expenses. Thereafter, Husband filed the second appeal in this matter.

## ANALYSIS

Husband contends that the trial court erred in its division of the marital property and in its award of alimony *in solido* to Wife. We shall address each issue in turn.

### DIVISION OF MARITAL PROPERTY

Following a hearing, the trial court found it "equitable for Wife to own all of the marital property awarded to her by Chancellor Neal in Paragraph 7, subparagraphs (a)-(e) of the [2005] Final Decree," less the $520,000 cash award. As the Final Decree After Remand reveals, Wife was awarded the marital residence, a second residential property in which her mother resides, Husband's 401(k), and a 2002 Camaro. Husband was awarded a houseboat, a tracker, a motorcycle, and interest in a BKM Truck Terminal. With the appreciation of Husband's stock classified as his separate property, which was the largest asset in the marital estate, the percent of the marital estate awarded to Wife increased to 64 percent.[2] Husband contends this is not equitable.

---

[2]In his brief, Husband stated that Wife received 83 percent of the marital estate, not 64 percent. At oral argument, Husband's attorney announced that he had miscalculated the assets and stipulated that Wife's figures were correct, that Wife received 64 percent and Husband received 36 percent of the marital estate. We wish to express our appreciation to Husband's counsel for voluntarily acknowledging the error in his brief; other attorneys should follow his lead.

The classification of the parties' property as separate or marital is no longer at issue. Moreover, the valuation of marital property is no longer at issue. Accordingly, our focus is on the division of the marital property.[3]

The trial court has wide latitude in the division of marital property. *Kinard*, 986 S.W.2d at 230. A division of marital property in an equitable manner does not require that the property be divided equally, *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002), and it is not a mechanical process; rather, it should be guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). Factors to consider in the division of the marital estate include:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c)(1)-(11).

---

[3]Once the marital property has been identified and valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001).

The relevant facts are undisputed. Husband and Wife were married for seventeen years, during which time Husband was always the primary financial contributor, while Wife was always primarily responsible for the care of the home and the parties' child. Husband has a far superior income and a far superior earning capacity than Wife. Husband's separate estate, which appears to exceed $2,000,000, dwarfs that of Wife's for she has no separate assets of any value. Moreover, the relative ability of each party for future acquisitions of capital assets and income once again places Wife at another significant disadvantage.

The Final Order After Remand reveals that the trial court considered the relevant factors listed in Tenn. Code Ann. § 36-4-121(c) in the division of marital property. This court accords great weight to the trial court's division of marital property, *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996), and we defer to the trial court's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c), or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). After considering the relevant statutory factors and the evidence in the record, we have determined that the trial court's division of the marital estate is not inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) and that the evidence does not preponderate against the trial court's division of the marital estate. Accordingly, the division of the marital estate is affirmed.

## ALIMONY *IN SOLIDO*

The trial court granted Wife alimony *in solido* in the amount of $478,000. Husband contends that the trial court abused its discretion by awarding alimony in excess of Wife's financial needs and the standard of living she enjoyed during the marriage. Specifically, Husband argues that the trial court "simply changed the Wife's allocation of the Husband's interest in his father's corporation from division of 'marital property' to 'alimony *in solido*.'" The question, as Husband identifies it in his brief, is "whether the increase in value of Husband's separate property should determine the type and the amount of alimony to be awarded. . . ."

It has long been recognized in Tennessee that the trial court has broad discretion in awarding spousal support. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006) (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004)). Further, the trial court has broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of support. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Accordingly, we are generally disinclined to second-guess a trial judge's decision regarding spousal support unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Broadbent*, 211 S.W.3d at 220; *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Kinard*, 986 S.W.2d at 234.

The General Assembly has directed in Tenn. Code Ann. § 36-5-121(c)(2) that where one spouse suffers economic detriment for the benefit of the marriage, e.g., by staying home to care for the parties' children instead of pursuing a career, the economically disadvantaged spouse's post-divorce standard of living should "be reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties." The statutory factors a trial judge is to consider when deciding whether to award alimony and, if so, the type of alimony and the amount and duration, are set forth at Tenn. Code Ann. § 36-5-121(i).

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> . . . .
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property;
> (9) The standard of living of the parties established during the marriage;
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
> (12) Such other factors, . . . as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

In this case, the trial court correctly found that Wife was economically disadvantaged compared to Husband. That determination was based on the following specific findings of fact, which the trial court found to be "especially relevant":

A. The divorce was granted to [Wife] on her Counter-Complaint because of the inappropriate marital conduct of [Husband]. Chancellor Vernon Neal found Wife and her witnesses to be more truthful and credible.

B. Separate property of the parties must be considered as Husband has over Two Million ($2,000,000) Dollars of separate property while Wife has little separate property.

C. Husband has a significantly greater earning capacity than Wife. Chancellor Neal found [Husband] to have income of $14,423.00 per month. [Wife] has been out of the job market a good while as the parties agreed she would be a stay at home Mother since the parties' child was born in 1990. She was a full-time homemaker and also the family financial manager. The proof showed Wife has Hashimoto disease, which is a disease causing her internal organs to age faster than normal. But no proof showed that the disease prevented her from working or caused or to be totally incapacitated. The Court of Appeals found Wife could be rehabilitated. The undersigned concurs in that finding.

D. Wife has a high school education. Husband has completed three years of college.

E. [Wife] has made significant contributions caring for the parties' home and child. Husband worked for Service Transport, Inc. and was away from home on the road three to four nights a week much of the time.

F. Wife has a need for alimony and Husband has the ability to pay. Husband's separate property stock in Service Transport, Inc. and its appreciation in value during the marriage (which was ruled by the Supreme Court to also be his separate property) was valued at $1,993,272.00. (As shown in Paragraph 5 of the Final Decree, Husband's net money proceeds from the sale were $1,283,368.00 and his interest in Dartmoor Realty, LLC received from the sale of Service Transport, Inc. was valued at $709,904.00).

The trial court then stated in its June 27, 2008 Final Order After Remand that it considered the facts set forth above and the relevant law, including Tenn. Code Ann. § 36-5-121(h) and § 36-5-121(d)(5)), and found it appropriate to order Husband to pay to Wife, in a lump sum, alimony *in solido,* in the amount of $478,000.00.

It is the role of this court in reviewing an award of spousal support to determine whether the trial court applied the correct legal standard and reached a decision that is not

clearly unreasonable. *Id.* (citing *Bogan*, 60 S.W.3d at 733). As revealed in the June 27, 2008 order, the trial court considered the relevant statutory factors in Tenn. Code Ann. § 36-5-121(i), it made specific findings regarding those factors as well as the General Assembly's intent stated in Tenn. Code Ann. § 36-5-121(c)(2), finding that Wife was economically disadvantaged as compared to Husband, that Wife had little separate property of her own, while Husband had substantial separate assets, that Husband had a greater earning capacity than Wife, and that Wife had made significant contributions during the marriage caring for the parties' home and child while Husband worked. The trial court also found that Wife had the need for alimony while Husband had the ability to pay.

We are generally disinclined to second-guess a trial judge's decision regarding spousal support unless it is not supported by the evidence. *Broadbent*, 211 S.W.3d at 220; *Bogan*, 60 S.W.3d at 727. We have determined that the trial court's findings of fact are fully supported by the evidence in this record. Thus, the question is whether the amount of the award is *clearly unreasonable*. *See Broadbent* at 220, *see also Bogan*, 60 S.W.3d at 733.

As Husband correctly notes, the amount of alimony *in solido* awarded to Wife is the same amount as the cash payment made by Husband after the stay was lifted in 2007. We recognize this is more than a coincidence; however, that fact standing alone is not sufficient for us to conclude that an award of $478,000 of alimony *in solido* is clearly unreasonable in light of the fact Husband has separate assets of approximately $2 million and an earning capacity that greatly exceeds that of Wife. As we noted earlier, the trial court has broad discretion to determine the nature and amount of alimony, *see Garfinkel*, 945 S.W.2d at 748, and we will not reverse or modify the court's decision regarding spousal support unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes. *Broadbent*, 211 S.W.3d at 220; *Bogan*, 60 S.W.3d at 727; *Kinard*, 986 S.W.2d at 234. We have determined the trial court's decision to award Wife alimony *in solido* of $478,000 is not contrary to public policy and it is supported by the evidence. Accordingly, the award of $478,000 to Wife as alimony *in solido* is affirmed.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against the appellant, Timothy Wade Keyt.

_____
FRANK G. CLEMENT, JR., JUDGE