IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 19, 2013 Session

# CHARLOTTE ANN GOAD HUMAN v. JEFFREY ALLEN HUMAN

**Appeal from the Chancery Court for Morgan County**
**No. 10-84     Frank V. Williams, III, Chancellor**

---

## No. E2012-01853-COA-R3-CV-FILED-SEPTEMBER 23, 2013

---

After fifteen years of marriage, Charlotte Ann Goad Human ("Wife") sued Jeffrey Allen Human ("Husband") for divorce. After a trial, the Trial Court entered its Final Decree of Divorce which, *inter alia*, declared the parties divorced, divided the marital assets and debts, and entered a Permanent Parenting Plan designating Husband as the primary residential parent for the parties' two minor children. Wife appeals to this Court alleging that the Trial Court erred in entering a Parenting Plan designating Husband as the primary residential parent when Husband did not request this designation. We find that the evidence does not preponderate against the Trial Court's findings relative to the Permanent Parenting Plan, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J. joined.

Jennifer Eldridge Raby[1], Kingston, Tennessee, for the appellant, Charlotte Ann Goad Human.

Judith R. Whitfield, Oak Ridge, Tennessee, for the appellee, Jeffrey Allen Human.

---

[1]Wife was represented by Michael G. Hatmaker of Jacksboro, Tennessee when she filed her appeal. After oral argument before this Court but before disposition of the appeal, Wife filed a motion seeking to discharge Michael G. Hatmaker. By order dated July 16, 2013 this Court granted Wife's request to discharge Mr. Hatmaker. Jennifer E. Raby then filed a notice of appearance as counsel for Wife in this case. Although we list Ms. Raby as Wife's counsel, we note that Mr. Hatmaker briefed and argued the case before this Court.

# OPINION

## Background

Wife and Husband were married in June of 1995. Two children were born of the marriage (collectively "the Children"). Wife sued Husband for divorce in September of 2010 . The case was tried in May of 2012.

At the time of trial, the parties' son ("Son") was eleven years old, and their daughter ("Daughter") was eight. Wife testified at trial that the Children attend a private religious school. Wife's sister and brother-in-law run the school. Wife testified that the Children had attended this school for four years.

Wife admitted that Son is struggling in math. Wife testified that she goes to the Children's school every day and works with Son "about three to four hours per day" on his school work. Wife admitted that even with her working with Son three or four hours per day at school, Son still did not pass to the sixth grade in all subjects. Wife testified:

> [The school] is on a system, where they are on like a pace system. Each student is at a different level. You kind of go at the pace that you go at until you master that skill.

> He got behind with his times tables. So I stopped his paces, so we could work on times tables. So at the end of the year, I - - you know, we did not complete all the paces in math this year.

At the time of trial, the parties were operating on a 50/50 split custody schedule. Wife explained: "one week, [Husband] has [the Children] Thursday, Friday, Saturday, and then the next week - - he brings them back on Sunday. The next week, he has them on Monday, Tuesday, Wednesday, Thursday." Wife testified that Husband works from 5 a.m. until 5 p.m. Wife was asked what objection she has to a 50/50 split of custody during the school year, and she stated: "I object to the fact that [Husband] leaves at 5:00," and "[d]ifferent people pick [the Children] up."

Son takes prescription medicine. Wife testified that she gave this medicine to Husband "at least, six times," but that Husband did not administer the medication while Son was with Husband. Wife admitted, however, that she had not given Husband any medications to give to Son since the middle of last year .

Wife testified that after the Children stay with Husband:

When they arrive at school and I meet them at the schoolhouse, their hygiene is poor. They have not had breakfast. [Son] has not had medicine. The medicine takes about an hour, an half [sic] and a half to work, so you're looking at 10:00 or 11:00. [Husband] allows [Son] to go coon hunting three to four times a night (sic) on school nights.

Wife testified: "if all of the stars are aligned with [Son], if he's slept, if he's had his medicine, if all is well, [Son] struggles. If any of that is off-key, he doesn't do well."

Wife also testified:

These are our children. I wanted the children kept between me and him. And I wanted me and him to do the childcare. I will agree to the school schedule and the summer schedule, with the fact that I get to be the one to provide the childcare during the summer and with any event during school. If they're out, if they're sick, if it snows, and even like when they're having spring break, fall break, I want - - [Husband] does not - - is not off during that time. He goes to work. So I want to like resort to the summertime, like if they want to meet me at 10:00, I'll watch them. I will bring them back, too, at the end of the day. I - - I want - - I'm the parent. I'm available, and I think that is in the best interest of - - … - - when he is unavailable and he has them, and he is at work, - - he gets off on major holidays, I just want to be the childcare giver. He can have them back that evening.

Wife admitted that Son is having certain issues while at her house. We need not and will not discuss these personal issues in detail in this Opinion for Son's sake. Husband testified that Son is not having these issues when he is with Husband.

Husband testified that his adult niece who lives "200 yards" from where Husband lives assists him with transporting the Children. Husband testified that a few times when the niece was unable to assist Husband, he has obtained assistance from other people including his brother who also lives near Husband. During the time between the end of the school day and when Husband arrives home from work, the Children stay with Husband's niece, his sister, or his mother.

Husband testified that he wants to send the Children to public school. When asked how Son was doing at the religious school, Husband stated: "not as good as he could have done." Husband admitted that Son would struggle in public school, but stated that he would struggle anywhere. Husband testified that Daughter is interested in playing basketball, which she cannot do at the religious school. She also wants to be a cheerleader. Husband

wants Daughter to have the opportunity to do these activities.

Husband testified that Wife gave him medication for Son only on two occasions. Husband was asked if he was opposed to giving Son the medication, and he stated: "I'm not opposed to nothing that's the good for my kids."

Husband was asked what schedule he proposed for parenting and he stated:

A week on, a week off, I don't have to get texts constantly in the middle of the day when we swap at work, and try to juggle when she won't bring them, she will bring them. She tries to tell me who - - who is acceptable to pick them up, who's not. If we do it week on, week off, it's less stress on the kids, because the kids just has to deal with this one time. If it's through the school year, she could take them to school. I pick them up. You know, we don't have to deal with each other. That way, there's no stress on the kids. There's many benefits to that, I think.

When asked if he gets phone calls with the Children while they are with Wife, Husband stated: "Very few…. Some, but very few." Husband further stated: "the only thing I can call is their cell phones…. And - - and if [Wife] don't want me to talk to them or if - - now, it ain't all her. Sometimes the kids will turn them off."

After trial, the Trial Court entered its Final Decree of Divorce on July 26, 2012 which, *inter alia*, declared the parties divorced, divided the marital assets and debts, and entered a Permanent Parenting Plan ("Parenting Plan") designating Husband as the primary residential parent for the Children. Under the Parenting Plan Husband basically has the Children during the school year, and Wife has them on alternate weekends and during the summer. Husband has the Children on alternate weekends during the summer. The Parenting Plan provides that Husband has the Children for 243 days and Wife has them for 122. The Parenting Plan also provides that major decisions regarding education and non-emergency health care for the Children will be made by Husband.

On August 29, 2012, the parties filed a Joint Waiver of Appeal of Final Decree of Divorce as to All Issues Except the Parenting Issues. Wife appealed the parenting issues to this Court.

## Discussion

Although not stated exactly as such, Wife raises one issue on appeal: whether the Trial Court erred in entering the Parenting Plan designating Husband as the primary

-4-

residential parent when Husband had not requested this designation.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As pertinent to the issue raised by Wife, Tenn. Code Ann. § 36-6-106 provides:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;
(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;
(4) The stability of the family unit of the parents or caregivers;
(5) The mental and physical health of the parents or caregivers;
(6) The home, school and community record of the child;
(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;
   (B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than

-5-

those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred....

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order.

Tenn. Code Ann. § 36-6-106(a) (Supp. 2012). Pursuant to Tenn. Code Ann. § 36-6-404, when entering a permanent parenting plan a court also shall consider:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-404(b) (2010).

In her brief on appeal Wife asserts that the Trial Court made no finding of best interests. Wife is mistaken. The Trial Court made specific findings regarding the best interests of the Children in its Memorandum Opinion, which the Trial Court incorporated by reference into its Final Decree of Divorce. In its Memorandum Opinion the Trial Court correctly noted "the priority is - - is, obviously, what to do about the best interest of the children. And in that regard, I don't necessarily feel in any way bound by the recommendations, or the feelings, or the preferences of either parent." The Trial Court then discussed the evidence in light of the relevant factors including the problems that Son was experiencing in school and the other issues that Son was having while in Wife's care.

As this Court has explained:

[T]he trial court was obligated to consider the applicable statutory factors in

Section 36-6-106(a) in reaching its decision regarding the comparative fitness of the parties. *See Burnett v. Burnett*, 2003 Tenn. App. LEXIS 508, E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 (Tenn. Ct. App. July 23, 2003). "However, the statute does not require a trial court, when issuing a memorandum opinion or final judgment, to list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination." *Id.* Moreover, not every factor is applicable in a given case, and the trial judge is required to consider only the factors which are applicable. *Id.*; *see also Mueller v. Mueller*, 2004 Tenn. App. LEXIS 770, W2004-00482-COA-R3-CV, 2004 WL 2609197, at *6 (Tenn. Ct. App. Nov. 17, 2004).

*Bell v. Bell*, No. W2004-00131-COA-R3-CV, 2005 Tenn. App. LEXIS 108, at *13 (Tenn. Ct. App. February 22, 2005), *no appl. perm. appeal filed*. A careful and thorough review of the record on appeal reveals that the Trial Court did consider the best interests of the Children in light of the applicable statutory factors, and that the evidence does not preponderate against the Trial Court's findings.

In her brief on appeal Wife asserts that "[t]he court should have found that either the wife's or husband's parenting plan should have been adopted." Again, Wife is mistaken. "[C]ustody and visitation arrangements are among the most important decisions confronting a trial court in a divorce case. The needs of the children are paramount; while the desires of the parents are secondary." *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). As this Court stated in *Gaskill*:

Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law.

*Id.* at 631. The Trial Court was not required to adopt wholesale one of the plans proposed by the parties. Rather, the Trial Court was required to make a custody determination based upon the best interests of the Children considering all of the relevant factors. Tenn. Code Ann. 36-6-106(a) (Supp. 2012). Wife's argument that the Trial Court erred by not adopting one of the parties' proposed plans is without merit.

The evidence in the record on appeal does not preponderate against the Trial Court's findings, and we find no error in the Trial Court's entry of the Parenting Plan.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below.  The costs on appeal are assessed against the appellant, Charlotte Ann Goad Human, and her surety.

_____
D. MICHAEL SWINEY, JUDGE